Leola E. **HARDIN**

v.

**THIOKOL CORPORATION.**

Civ. A. No. 77–0985.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Aug. 29, 1977.

---

6. "No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *."

Donald R. Miller, Shreveport, La., for plaintiff.

A. M. Brewer, Baltimore, Md., for defendant.

## OPINION

STAGG, District Judge.

On July 27, 1977, the Court held a trial in this case and ruled from the bench in favor of defendant Thiokol Corporation (Thiokol). The next day it rendered a judgment. Defendant has requested a written opinion. The request is granted.

The question posed by this suit simply is whether Thiokol Corporation discharged Mrs. Leola Hardin from the Louisiana Army Ammunition Plant for an impermissible reason, that is, because of her sex.

### FINDINGS OF FACT

1. Following her employment on July 17, 1966, Mrs. Hardin served as the x-ray technician in the ordinance plant until a reduction in force took place on September 19, 1975.

2. Mrs. Hardin contends that after her termination as the x-ray technician, a junior male employee, Ray Calloway, performed the x-ray duties that she formerly had performed. Because he was male she charges that Thiokol discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

3. There is a considerable body of evidence about Mrs. Hardin's abilities and her experiences as an x-ray technician. There is not a scintilla of evidence to show other than that she was competent as an x-ray technician. For example, in the collection of personal records there is a sheet called an employee performance review. In most of the categories, she received the highest rating: as to knowledge, the highest rating; as to the quantity of work, sufficient work; as to dependability, the highest rating; as to initiative, the normal amount of interest and aggressiveness; as to oral and written expressions, the highest rating; as to safety, the highest rating. There is no question but that she was a competent and devoted employee.

4. There is much evidence in the record about the abilities of Mr. Calloway. This evidence as to Mrs. Hardin's undoubted competence and the duties performed by Mr. Calloway does not assist in a factual determination of the central question: was Leola Hardin a victim of sex discrimination in the termination of her employment by Thiokol?

5. Mrs. Hardin was the victim of the economics of the business of ammunition manufacturing and of the seniority system of the ammunition manufacturer. When there are no wars being waged, part of the price of peace is the jobs of nice people like Leola Hardin.

6. The Court finds that the defendant proved by a preponderance of the evidence that Mrs. Hardin was laid off because of an economically forced reduction in the number of employees and a reorganization. She could have bumped down according to the seniority policy that was enunciated in the company seniority bulletin, policy 16, but she chose a lay-off.

7. Policy 16 described the order of layoff. If defendant abolished a job, the person with that job could bump the least senior person junior to him in the same job classification. If the person could not bump anyone in his same classification, he could bump the least senior person junior to him

in the same pay grade, regardless of classification. Finding no one, he could bump the least senior person in the next lower pay grade, and so forth.

8. Thiokol abolished Mrs. Hardin's job classification. Thus, she could not bump into that class. She then could have bumped into her pay grade, grade 6, but she was junior to all employees in that grade. She could have bumped into an industrial position in grade 5 but chose not to do so. In any event, she would not have bumped to grade 4, Mr. Calloway's job grade. Even if she had, there were employees junior to Mr. Calloway whom she would have had to bump first. Thus by the operation of the neutral seniority system Mrs. Hardin could not have bumped Mr. Calloway.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter and the parties, and it is a Court of proper venue.

 2. As an individual plaintiff, Mrs. Hardin bore the burden of proving a *prima facie* case of employment discrimination. She showed that she was qualified for her position, that her job was eliminated, and that a less qualified male employee assumed her former job duties. *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Thomas v. J. C. Penney Co.*, 531 F.2d 270 (5th Cir. 1976). She made out a *prima facie* case of unlawful discharge on account of her sex.

3. It then became incumbent upon Thiokol to show a legitimate, non-discriminatory reason for the discharge. The defendant had the burden of proving its reason by a preponderance of the evidence. *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (5th Cir. 1977).

4. The operation of a bona fide seniority system does not violate Title VII. The seniority system in policy 16 applies to all non-exempt, non-bargaining employees without regard to their sex. There exists no evidence that the system operated to lock plaintiff into her job or otherwise to perpetuate the effects of past discrimina-

tion. The seniority system here at issue is valid pursuant to the test applied by the United States Supreme Court in *International Brotherhood of Teamsters v. United States*, —— U. S. ——, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

5. Further, the defendant has established a legitimate, non-discriminatory reason for the eventual discharge of Mrs. Hardin. Thus, it shifted the burden of proof back to her to prove by a preponderance of the evidence that the reason was a pretext for sex discrimination. *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (1977). Mrs. Hardin failed to adduce sufficient evidence to meet that burden.

6. Therefore, there must be judgment in favor of the defendant Thiokol, dismissing Mrs. Hardin's claim at her cost.