Sylvia **OSHIVER**

v.

**COURT OF COMMON PLEAS, COURT ADMINISTRATION.**

Civ. A. No. 78–3199.

United States District Court, E. D. Pennsylvania.

April 27, 1979.

Faye R. Cohen and Alan M. Lerner, Philadelphia, Pa., for plaintiff.

Jonathan Vipond, III, and Kathleen M. Quinn, Philadelphia, Pa., for defendant.

POLLAK, District Judge.

■ Plaintiff Sylvia Oshiver began working for defendant Court of Common Pleas[1] in 1969,[2] first as a Statistical Clerk and then as a Programmer Trainee. Not having progressed beyond Trainee in eight years, plaintiff filed charges of age and sex discrimination with, respectively, the Department of Labor and the Equal Employment Opportunity Commission in the summer of 1978. When notified in September that she was one of approximately thirty members of the Court of Common Pleas staff to be terminated for budgetary reasons, plaintiff brought this lawsuit, challenging both the failure to promote and the termination. She alleged in her complaint that her termination was both a second discrimination against her on the basis of her age and/or sex and an act of retaliation for having previously filed charges that her non-pro-

motion was based on defendant's age and sex discrimination. The complaint, seeking reinstatement at a proper level of employment and back pay, asserted causes of action under (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, (2) The Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and (3) the Civil Rights Act of 1871, 42 U.S.C. § 1983.[3]

Plaintiff has moved for a preliminary injunction requiring defendant to reinstate her pending an ultimate plenary hearing on plaintiff's prayer for a permanent injunction and damages.[4] Defendant has filed a motion to dismiss the complaint. For the reasons which follow, defendant's motion is denied and plaintiff's motion is granted.

## I. The Motion to Dismiss

■ Defendant moves to dismiss the complaint on four grounds. First, defendant asserts that plaintiff failed to pursue an available state remedy for age discrimination, thereby barring the age discrimination count of this complaint. However, the Court of Appeals in this Circuit has recently announced that no such exhaustion of state remedies is required. *Holliday v. Ketchum, MacLeod & Grove, Inc.*, 584 F.2d 1221 (3d Cir. 1974).[5]

■ Second, defendant also argues that plaintiff has failed to allege that she notified the Secretary of Labor before suing on

---

1. Defendant insists that the caption by which it is sued, "Court of Common Pleas, Court Administration," is incorrect. But the defect in nomenclature, if defect there be, does not appear to be jurisdictional. Nor is there any claim that this caption does not put on notice all those officials who should be informed, whether as parties defendant or otherwise.

2. Plaintiff had previously worked for several years with the Family Court, which became part of the Court of Common Pleas in 1969.

3. This Court entered a temporary restraining order in plaintiff's favor; but, following the expiration of that order, her employment was terminated.

4. Since plaintiff's prayer for a preliminary injunction contemplates reinstatement in her former position, not installation in a new position

at a higher job-classification level, there is no need to determine whether plaintiff has made out a *prima facie* case of discriminatory non-promotion. Accordingly, the issues bearing on the promotion question are not pursued in this opinion, except insofar as they form part of the background necessary to a proper understanding of plaintiff's motion.

5. The Supreme Court recently granted certiorari to review an *Eighth Circuit* case dealing with this issue. *Evans v. Oscar Meyer & Co.*, 580 F.2d 298 (8th Cir. 1978), *cert. granted*, —— U.S. ——, 99 S.Ct. 308, 58 L.Ed.2d 318. Should the Supreme Court conclude that the rule announced by the Third Circuit in *Holliday* is erroneous, defendant will be granted an opportunity to renew its motion to dismiss the age discrimination count.

the claim that the termination of her employment was in retaliation for her filing of an age discrimination complaint. Plaintiff asserts that she can remedy this defect by amending her pleading. She will be allowed to move to do so.

■ Third, defendant asserts that this Court is without jurisdiction to entertain plaintiff's Title VII claim of sex discrimination, since the complaint does not allege receipt by plaintiff or a "right to sue" letter from the Department of Justice.[6] But plaintiff has now filed with the Court a copy of her "right to sue" letter, curing the jurisdictional problem. See 42 U.S.C. § 2000e–5(f)(1); *Jones v. United Gas Improvement Corp.*, 383 F.Supp. 420, 424–25 (E.D.Pa.1974) (citing cases).

■ Finally, defendant urges that the complaint does not state a cause of action under Section 1983 for the reason that it alleges only a single act of discrimination against plaintiff, not a systematic policy of the Court of Common Pleas to discriminate against female and/or older employees. Defendant relies on *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for the proposition that a state or local governmental entity may be found liable under Section 1983 not on a broad *respondeat superior* basis but only for such infringements of a plaintiff's constitutional rights as are adopted by the governmental entity as official policy. Assuming, *arguendo*, that this reading of *Monell* embraces the entire implication of that important decision, defendant is nonetheless not entitled to dismissal of this count at this preliminary stage. It is true that the complaint alleges acts of discrimination against only one individual. Plaintiff may, however, be able to prove at the ultimate plenary hearing that her firing and her failure to win promotion are not isolated events but reflect a generalized discriminatory policy. Thus there is a conceivable set of facts under which plaintiff could prove a cause of action under this

count. The possibility of such proof requires that a motion to dismiss a count be denied. See, e. g., *In re Pittsburgh & Lake Erie R. R. Co. Securities Litigation*, 378 F.Supp. 441 (E.D.Pa.1974).

## II. The Motion for a Preliminary Injunction

In deciding whether to grant a preliminary injunction, a federal court must examine four questions:

(a) Did the movant make a strong showing that it is likely to prevail on the merits?

(b) Did the movant show that, without such relief, it would be irreparably injured?

(c) Would the grant of a preliminary injunction substantially [harm] other parties interested in the proceedings?

(d) Where lies the public interest?

*A. O. Smith Corp. v. F. T. C.*, 530 F.2d 515, 525 (3d Cir. 1976).

■ In order to demonstrate the requisite likelihood of success on the merits, plaintiff must put forward evidence which demonstrates the existence of a *prima facie* case of discrimination on a prohibited basis. See *Hochstadt v. Worcester Foundation for Experimental Biology*, 425 F.Supp. 318, 324 (D.Mass.), *aff'd*, 545 F.2d 222 (1st Cir. 1976). The burden then shifts to the defendant to show a good faith non-discriminatory reason for the action taken. *Id.* Of course, the determination at this preliminary stage of whether plaintiff has presented a *prima facie* case and whether defendant has offered an adequate explanation for apparently discriminatory acts is likely to be based on a more slender record than can be expected to be presented at a subsequent plenary hearing finally determining the litigation.

The elements of a typical *prima facie* case of discrimination were aptly summarized in *McDonnell Douglas Corp. v. Green*, 411 U.S.

---

**6.** Where the employer is a governmental unit, the Department of Justice, and not the EEOC, issues the "right to sue" letter. 42 U.S.C. § 2000e–5(f)(1).

792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (footnote omitted): [7]

The complainant in [an employment discrimination] trial must carry the initial burden of establishing a prima facie case of . . . discrimination. This may be done by showing (i) that he belongs to a [protected group]; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

■ The facts of this case are the inverse of *McDonnell Douglas*. This is a case where the plaintiff, one of a group of persons employed in a unit of a government agency, was singled out for dismissal. In this context, plaintiff has established a *prima facie* case that the dismissal was discriminatory—i. e., grounded on age and/or sex—if she has established that she is a member of a protected class, that she was qualified for the job she was holding, that she was laid off, and that others not members of the protected class continued to work at the same type of job at which she was working. The burden would then shift to the defendant to establish a legitimate non-discriminatory reason for plaintiff's dismissal.

■ To establish a *prima facie* claim that her discharge was retaliatory, plaintiff would have to demonstrate that she engaged in protected employee activity, that she was discharged, and that there appeared to be a causal connection between the activity and the discharge. Again, defendant would then have the burden of demonstrating a legitimate, non-retaliatory reason for plaintiff's discharge. *Hochstadt v. Worcester Foundation, supra.*

A. *Findings of Fact*

Plaintiff is a fifty-seven year old woman who was employed by the court system in Philadelphia between 1963 and 1978. From 1963 to 1969 she was employed by the Family Court, and from 1969 to October, 1978, she was employed by the Court of Common Pleas. Her first Court of Common Pleas job classification was Statistical Clerk II. In 1970, she was reclassified as a Programmer Trainee, and, as part of the Data Processing Unit of the Court of Common Pleas, helped in the computerization of the Court's record-keeping. Between 1970 and early 1978, she received no promotions, although she frequently sought them. Both before and during this period, plaintiff compiled an admirable record in college courses in management and data processing taken on her own time and partly with her own funds. In 1975 she took an examination for a position as Programmer with the Philadelphia Justice Information System (PJIS), a federally-funded project to computerize the record-keeping of the Philadelphia courts. She received the highest examination score of those applying for the position, but eventually withdrew from consideration because she did not believe that federal funding for the project would continue indefinitely. In 1977, federal funds for the project were terminated and some employees of PJIS were absorbed into the Data Processing Unit of the Court of Common Pleas.

Plaintiff has only once received a formal work evaluation from a supervisor at the Court of Common Pleas. This was in 1975, when Thomas Giordano rated her work as "Satisfactory." There was testimony, however, that Mr. Giordano's initial assessment of plaintiff's work was less favorable— namely, that she was unable to complete her programming tasks on time or without great amounts of help. The Director of the Data Processing Unit, William Fisher, then directed Mr. Giordano to evaluate plaintiff's performance without regard to these factors. It was on this basis that she received her satisfactory rating.

7. *McDonnell Douglas* was a race discrimination case arising under Title VII. The standard announced there also applies to Title VII sex discrimination cases, see *Hochstadt v. Worces-* *ter Foundation, supra,* and to cases brought under the Age Discrimination in Employment Act. See *Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730 (5th Cir. 1977).

In January 1978, plaintiff was informally assigned the title of Documentation Technician, which title became formal on July 3, 1978. This change of title carried no increase of salary with it. There were, however, discussion indicating a shared expectation of plaintiff and her supervisors that the position of Documentation Technician would eventually be upgraded. This position did not involve extensive computer programming duties.

On June 29, 1978, plaintiff filed a charge of sex discrimination with the Equal Employment Opportunity Commission and a charge of age discrimination with the United States Department of Labor. She alleged that sex and age discrimination were the reasons that she had not been promoted from the position of Programmer Trainee to Programmer or Programmer Analyst.

In July 1978, it became clear that the Court of Common Pleas would need to reduce its staff in order to pay for raises due to municipal employees (a category which, for this purpose, included employees of the Court of Common Pleas). It was originally believed that about 140 positions (out of about 2000 Court jobs) would need to be eliminated, but by deferring the pay increase, by encouraging early retirements, and by attrition, the Court reduced its need for terminations to about thirty persons.

The Court Administrator, Judge David Savitt, assigned the responsibility for deciding who would be laid off to the two Deputy Court Administrators Thomas Kempin (Management Services) and J. Dennis Moran (Operations). Because there had been no previous need for layoffs within the Court of Common Pleas, no general procedures had ever been established for deciding how persons should be selected for termination. The two Deputy Court Administrators therefore asked the heads of units or departments to propose individuals to be terminated. Mr. Fisher, as chief of Data

Processing, proposed to Deputy Administrator Moran that two members of his unit be considered for possible layoff: one was plaintiff Oshiver; the other was Ms. D____ R____, administrative assistant to Mr. Fisher. At the time of submission of names, the Data Processing Unit had about forty members. On September 15, 1978, Mr. Moran transmitted to Judge Savitt the names of twenty-eight members of the Court of Common Pleas staff whose termination he recommended. Of these twenty-eight, plaintiff was the only member of the Data Processing Unit. After consideration, Judge Savitt approved the list, and forwarded it to the other Deputy Administrator, Mr. Kempin, who sent out notices of termination.

The evidence that plaintiff's discharge was an act of sex discrimination can be summarized as this:

(1) Throughout the period from 1969 to 1978, men greatly outnumbered women in the technical [8] and managerial positions in the Data Processing Unit. In 1970, three (including plaintiff) of the nine technical-managerial personnel were women. In 1978, two (including plaintiff) out of twenty were women.

(2) Promotion from Programmer Trainee to Programmer was considered normal, and no other individual in the unit has remained in Programmer Trainee status as long as plaintiff.

(3) The only persons proposed for layoff by Mr. Fisher were two women. Among the personnel not proposed for layoff were three men who, like plaintiff, held technical positions and who were regarded by their supervisor as marginal employees: M____ B____, J____ M____ and D____ R____. Mr. B____'s work performance was considered below par, and the tasks assigned to Messrs. M____ and R____ were felt to be of little value to the Data Processing Unit. Messrs.

---

8. The parties have characterized as "technical" the positions of Programmer Trainee, Programmer, Programmer Analyst, Systems Analyst and Documentation Technician. They have characterized as "operational" or "non-technical" such positions as keypuncher, coder, computer operator, and administrative assistant. Thus, plaintiff was a technical employee. Ms. D____ R____, the other member of the Data Processing Unit nominated for possible termination by Mr. Fisher, was not a technical employee.

M_____ and R_____ were also junior to plaintiff in years of service in the Unit. Plaintiff would have been willing to accept reassignment as a Programmer Trainee—the status occupied by Messrs. M_____ and R_____—in order to avoid layoff.

The evidence of age discrimination is that:

(1) Plaintiff was not promoted to Programmer or Programmer Analyst despite the fact that younger individuals were so promoted regularly.

(2) Plaintiff and D_____ R_____, both of whom are over forty, are among the oldest persons in the Unit.[9] Messrs. B_____ and R_____ are under forty.

The evidence that plaintiff's termination was in retaliation for her filing of age and sex discrimination charges is that Mr. Fisher told Mr. Moran of the pendency of plaintiff's charges at the same time that he recommended plaintiff and Ms. Robinson for termination. A memorandum from Mr. Moran to Judge Savitt, dated September 15, 1975, contains a brief discussion of five of the twenty-eight individuals recommended for termination. This memorandum specifically notes that plaintiff filed an age discrimination complaint against the Court of Common Pleas. This memorandum was attached to the memorandum which Judge Savitt sent to Mr. Kempin listing those individuals whose employment the latter was to terminate.

Messrs. Fisher and Giordano, who supervised plaintiff, testified that they believed that plaintiff's performance as a Programmer Trainee was substandard in that (1) she needed an unusual amount of help with her programming assignments; (2) she took an unusually long time to complete many of those assignments; and (3) she had little potential to develop into a useful Programmer or Programmer Analyst. They testified that the plaintiff's "Satisfactory" rating was achieved only on the basis of criteria which did not include the amount of work she completed or the amount of help needed to complete assignments.

■ Judge Savitt testified that, some time before plaintiff was selected for termination, he had a discussion with Mr. Moran concerning plaintiff. During that discussion, Judge Savitt told Mr. Moran that the pendency of charges filed by Ms. Oshiver with federal agencies against the Court of Common Pleas should count neither against nor for her and that a decision on what Court personnel to terminate should depend solely upon whose termination would least impair the Court's efficiency. Further, Judge Savitt testified that he, rather than his subordinates, made the final decision concerning whom to terminate, and that he attempted to maintain strict neutrality on the subject of Ms. Oshiver's complaint.[10]

Mr. Fisher testified that he recommended that plaintiff or Ms. R_____ be laid off because they were the only employees in the department who were not directly involved in computer operations and programming, activities of the Data Processing Unit which, in his judgment, could not be curtailed. Plaintiff at that time was performing documentation rather than programming work, and Ms. R_____ was an administrative assistant.

**B.** *Conclusions of Law*

Plaintiff has demonstrated, by a preponderance of the evidence, a *prima facie* case that her discharge was the result of sex and/or age discrimination. Defendant has not demonstrated by a preponderance of

---

**9.** The Age Discrimination in Employment Act is designed to protect workers between the ages of forty and sixty-five. 29 U.S.C. § 631. Plaintiff was the oldest and one of the most senior persons in the Data Processing Unit.

**10.** Although Judge Savitt has taken upon himself the ultimate responsibility for terminating plaintiff's employment, the record is clear that he simply passed upon recommendations made to him by his subordinates, without making an independent investigation of who should be terminated. I fully credit Judge Savitt's testimony that he intended that the decision to terminate or retain Ms. Oshiver be made on a nondiscriminatory basis, and that he so instructed his subordinates. This does not, however, relieve defendant of liability for discrimination by Judge Savitt's subordinates resulting in the termination of plaintiff.

the evidence that her dismissal was based upon legitimate non-discriminatory factors. Plaintiff has demonstrated irreparable injury sufficient to entitle her to a preliminary injunction, while defendant has not shown that the granting of such an injunction will impose an undue hardship upon it. Finally, no public interest would be served by refusing to issue an injunction in these circumstances.

Plaintiff is a woman, fifty-seven years old at the time of her discharge: she is, manifestly, a member of the classes protected by, respectively, Title VII and the Age Discrimination Act.

Plaintiff presented credible evidence that she was qualified to perform the jobs of Programmer Trainee and Documentation Technician. She has been rated "Satisfactory" as a Programmer Trainee—the only formal performance rating she has ever received during her eight years in the Data Processing Unit. And at the time of her discharge plaintiff was performing the duties of Documentation Technician—including defining the scope of the position itself—in a satisfactory manner. She testified that she would have been willing to continue in either position in order to avoid termination.

■ After her termination, the Data Processing Unit continued to employ a completely male staff of Programmers and Programmer Trainees.[11] It is true that the position of Documentation Technician has not been filled since plaintiff's termination. Where a discharged employee's job classification is abolished, but many of the duties of the individual holding that position are performed by other employees, the trier of fact may look to a broader class of employees to determine if individuals with the plaintiff's qualifications are continuing employment with the employer. See *Hardin v. Thiokol Corp.,* 435 F.Supp. 1191 (W.D.La. 1977). The record indicates that plaintiff's position of Documentation Technician was created so that its holder could perform duties which had previously been performed piece-meal by many members of the Data Processing Unit; after the abolition of that position, the Unit remained responsible for documenting its programs.

Defendant's procedures—such as they were—for deciding who would be terminated in the Data Processing Unit resulted in the nomination for termination of two persons, both women over the age of forty. Plaintiff, the only member of the Unit actually terminated, was the only female non-supervisory technical employee in the Unit.

I thus conclude that plaintiff has made out a *prima facie* case of sex and/or age discrimination. The burden thus shifts to the defendant to demonstrate the existence of a valid non-discriminatory reason for plaintiff's discharge. See *McDonnell Douglas Corp. v. Green, supra.*

Defendant asserts that plaintiff was chosen for termination not because of her sex or age, but because her position was believed to be "marginal" in importance to the work of the Unit, and because her overall performance on the job was poor. There was evidence, however, that two male employees, Messrs. M____ and R____, were doing work which was of "marginal" value to the Unit. Further, there was evidence that another male employee, Mr. B____, was doing work of poor quality.

There is ground for skepticism with respect to the contention that plaintiff's overall performance was poor. While two of her supervisors testified to this performance, it is uncontested that the only evaluation in her official personnel file lists her performance as satisfactory. Further, no extrinsic or objective evidence of her poor performance has been produced. Of course, gaps in the evidence are to be expected at this preliminary stage of the case. However, because the burden of proof has shifted to the defendant, it must come forward with sufficient evidence to convince the trier of fact by a preponderance of the evidence that the plaintiff's work performance was poor. Defendant has not met this burden. Nor has it met the burden of showing that plaintiff was of less value to the Unit

---

11. One woman was employed in a technical supervisory position.

than Messrs. B_____, M_____, or R_____, each of them younger than plaintiff, each male, and each retained.

Plaintiff has thus established a substantial likelihood of success on the merits of her claim that she was discharged on the basis of her sex and/or age. I therefore need not decide, whether there is a substantial likelihood that she will prevail on her claim that her discharge was in retaliation for her filing of sex and age discrimination claims with federal authorities.

■ Plaintiff has also demonstrated that she will suffer irreparable injury if her petition for a preliminary injunction is denied. While under general rules of equity, mere loss of employment and attendant loss of reputation and flow of current income may not entitle a claimant to reinstatement by means of a preliminary injunction, see *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974),[12] plaintiff has shown other harms which she is suffering because of her termination. She has presented credible evidence of nervous and emotional problems brought on by her dismissal, and which have created difficulties for her in other areas of life. The opinion of the Court in *Sampson v. Murray, id.* at 92 n. 68, 94 S.Ct. at 953 "recognize[s] that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found. Such extraordinary cases are hard to define in advance of their occurrence."

Plaintiff's evidence that her health has suffered and will continue to suffer because of the trauma of the loss of her job goes beyond the monetary injury, which can be made up by a back pay award, and injury to reputation, which may be repaired by an ultimate adjudication that dismissal from employment was contrary to law. Cf.

*Sampson v. Murray, supra.* The injury concurrently being suffered by plaintiff cannot be cured by retrospective relief; and plaintiff requires a preliminary injunction to halt this continuing injury.

■ A further indication that plaintiff is suffering the irreparable injury required before a preliminary injunction may issue is that she has shown a substantial likelihood that she has been the victim of sex and/or age discrimination practiced by a governmental entity in violation of statutory command. Irreparable injury sufficient to support issuance of a preliminary injunction is demonstrated where a plaintiff has shown that termination of employment was an infringement of the First Amendment. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Although sex or age discrimination *per se* will not always result in irreparable injury, "a denial of equal protection rights may be more or less serious depending upon the other injuries which accompany such deprivation." *Constructors Association of Western Pennsylvania v. Kreps*, 573 F.2d 811, 820 n. 33 (3d Cir. 1978).[13] Plaintiff has not made out a *prima facie* claim under Section 1983, which means that the grievances of which plaintiff has made *prima facie* proof are not of constitutional dimension. Nonetheless, many of the same considerations which led the Supreme Court to state that a loss of First Amendment freedoms constitutes irreparable injury, and which led the Court of Appeals for the Third Circuit to suggest that the denial of equal *protection* is a factor to be considered in weighing a claim of irreparable injury, have application here. Unequal treatment of the basis of arbitrary criteria (here, age and/or sex) practiced by officials of a government agency may be in

---

12. These are the only harms demonstrated by the record in *Sampson v. Murray.*

13. Under Title VII the fact of sex discrimination alone does not transform the harm suffered into such irreparable injury as will support a preliminary injunction. See *Parks v.*

*Dunlop,* 517 F.2d 785 (5th Cir. 1975). *Parks,* however, does not stand for the proposition that such discrimination is not a factor to be considered in determining the existence of irreparable injury.

and of itself more humiliating than the same conduct practiced by a private individual. Such conduct is certainly destructive of the proper relationship between government and the citizenry. And, in this case, the harm of the discrimination itself is exacerbated by the mental and physical harms to which the plaintiff has testified.

The defendant has made no showing that it will be "substantially harmed," *A. O. Smith Corp. v. F. T. C., supra*, by a requirement that it reemploy plaintiff pending the outcome of this suit. The balance of hardship thus tips heavily in favor of the plaintiff. Further, there is no public interest in allowing defendant to continue what, on the preliminary record, appears to be a discriminatory course of conduct, by allowing it to operate without reinstating plaintiff.

A preliminary injunction will therefore issue, ordering the defendant to reinstate plaintiff either as Programmer Trainee or Documentation Technician, as the needs of the Unit dictate, pending the final disposition of this litigation. The parties are requested to present a form of order to the Court.