840 F.2d 701
 46 Fair Empl.Prac.Cas. 279,
45 Empl. Prac. Dec. P 37,782, 56 USLW 2502,
45 Ed. Law Rep. 58, 1 A.D. Cases 1210
 Vincent L. CHALK, Petitioner-Appellant,
v.
UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA,
Respondent,
ORANGE COUNTY SUPERINTENDENT OF SCHOOLS, also known as
Orange County Department of Education, and Robert
Peterson, in his official capacity, Real
Parties in Interest/Respondents.
 No. 87-6418.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 10, 1987.
Order Nov. 18, 1987.
Decided Feb. 26, 1988.
 
 Paul L. Hoffman, Susan D. McGreivy, Mickey J. Wheatley, Jon W. Davidson, Christine A. Littleton, ACLU Foundation of Southern California, Los Angeles, Cal., Marjorie Rushforth, Georgia Garrett-Norris, Joel J. Loquvam, Garrett-Norris & Rushforth, Joan K. Honeycutt, Jack C. Francis, Santa Ana, Cal., for petitioner-appellant.
 Ronald D. Wenkart, Costa Mesa, Cal., for respondents.
 
 
 1
 Elizabeth H. Esty, Sidley & Austin, Washington, D.C., Kirk B. Johnson, Martin J. Hatlie, Chicago, Ill., for amicus American Medical Ass'n.
 
 
 2
 John Van de Kamp, Atty. Gen., Andrea Sheridan Ordin, Asst. Atty. Gen., Marian M. Johnston, Supervising Deputy Atty. Gen., and M. Anne Jennings, Deputy Atty. Gen., for amicus State of Cal.
 
 
 3
 Kirsten L. Zerger, Chief Counsel, and A. Eugene Huguenin, Jr., Staff Counsel, for amicus California Teachers Ass'n.
 
 
 4
 Arlene Mayerson, Berkeley, Cal., Professor Karl Mannheim, Loyola University Law School, Los Angeles, Cal., for amicus Disability Rights and Educ. Defense Fund.
 
 
 5
 Karl Mannheim, Los Angeles, Cal., for amicus Nat. Hemophilia Foundation.
 
 
 6
 Chris Redburn and Rina Hirai, San Francisco, Cal., for amicus Employment Law Center of Legal Aid Soc. of San Francisco.
 
 
 7
 Nan D. Hunter, New York City, for amici Shirley L. Fannin, M.D., and Martin D. Finn, M.D.
 
 
 8
 Mark I. Klein, M.D., in pro. per., amicus.
 
 
 9
 Ron Apperson, Legal Advisor, and Belinda D. Stith, Asst. Legal Advisor, Los Angeles, Cal., for amicus Los Angeles Unified School Dist.
 
 
 10
 Kenneth R. Vogel, Loyola Law School, and Nora Quinn, Los Angeles, Cal., for amicus Western Law Center for the Handicapped.
 
 
 11
 Appeal from the United States District Court for the Central District of California.
 
 
 12
 Before SNEED, SKOPIL and POOLE, Circuit Judges.
 
 POOLE, Circuit Judge:
 
 13
 Petitioner Vincent L. Chalk is a certified teacher of hearing-impaired students in the Orange County Department of Education.[1] In February of 1987, Chalk was diagnosed as having Acquired Immune Deficiency Syndrome (AIDS). Subsequently, the Department reassigned Chalk to an administrative position and barred him from teaching in the classroom. Chalk then filed this action in the district court, claiming that the Department's action violated Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. Sec. 794 (West Supp.1987), as amended, which proscribes recipients of federal funds from discriminating against otherwise qualified handicapped persons.
 
 
 14
 Chalk's motion for a preliminary injunction ordering his reinstatement was denied by the district court, and Chalk brought this appeal.[2] After hearing oral argument, we issued an order reversing the district court and directing it to issue the preliminary injunction. Chalk v. United States Dist. Court, 832 F.2d 1158 (9th Cir.1987). In this opinion, we now set forth in full the reasons underlying our reversal.
 
 FACTS AND PROCEEDINGS BELOW
 
 15
 Petitioner Chalk has been teaching hearing-impaired students in the Orange County schools for approximately six years. In February 1987, Chalk was hospitalized with pneumocystis carinii pneumonia and was diagnosed as having AIDS. On April 20, after eight weeks of treatment and recuperation, he was found fit for duty and released to return to work by his personal physician, Dr. Andrew Siskind. The Department, however, placed him on administrative leave pending the opinion of Dr. Thomas J. Prendergast, the Director of Epidemiology and Disease Control for the Orange County Health Care Agency. On May 22, Dr. Prendergast informed the Department that "[n]othing in his [Chalk's] role as a teacher should place his students or others in the school at any risk of acquiring HIV[3] infection."[4]
 
 
 16
 Chalk agreed to remain on administrative leave through the end of the school year in June. On August 5, Chalk and representatives of the Department met to discuss his return to the classroom. The Department offered Chalk an administrative position at the same rate of pay and benefits, with the option of working either at the Department's offices or at his home, and informed him that if he insisted on returning to the classroom, it would file an action for declaratory relief. Chalk refused the offer. On August 6, the Department filed an action in the Orange County Superior Court, and Chalk filed this action in the district court seeking a preliminary and permanent injunction barring the Department from excluding him from classroom duties.[5] By agreement of counsel, the Department has not pursued the state court action; instead, it filed a counterclaim in the district court.
 
 
 17
 On August 18, Chalk moved for a preliminary injunction ordering the Department to reinstate him to his classroom duties pending trial. At a hearing on September 8, the district court denied the motion. Following the ruling, the Department reassigned Chalk to an administrative position coordinating grant applications and educational materials for the hearing-impaired program. A panel of this court denied Chalk's emergency petition for a writ of mandamus, but granted his alternative motion for an expedited appeal. Chalk then filed an emergency motion for an injunction pending appeal. We heard oral argument on November 10, and on November 18 we issued an order reversing the district court with this fuller statement of our reasons to follow.
 
 STANDARD OF REVIEW
 
 18
 The grant or denial of a motion for a preliminary injunction lies within the discretion of the district court, and its order will be reversed only if the court relied on an erroneous legal premise or otherwise abused its discretion. Sports Form, Inc. v. United Press Int'l, Inc., 686 F.2d 750, 752 (9th Cir.1982); Wright v. Rushen, 642 F.2d 1129, 1132 (9th Cir.1981); Los Angeles Memorial Coliseum Comm'n v. National Football League, 634 F.2d 1197, 1200 (9th Cir.1980) (L.A. Coliseum ). To determine whether there has been an abuse of discretion, the reviewing court must consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). An order is reversible for legal error if the court did not apply the correct preliminary injunction standard, see Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308, 314-15 (9th Cir.1978), cert. dismissed, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979), or if the court misapprehended the law with respect to the underlying issues in the litigation, see Sports Form, 686 F.2d at 752; L.A. Coliseum, 634 F.2d at 1200. An abuse of discretion may also occur when the district court rests its conclusions on clearly erroneous findings of fact. Sports Form, 686 F.2d at 752. A finding of fact is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).
 
 
 19
 APPLICATION OF THE PRELIMINARY INJUNCTION STANDARD
 
 
 20
 The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits. L.A. Coliseum, 634 F.2d at 1200. The moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. Id. at 1201; Benda, 584 F.2d at 314-15. "These are not separate tests, but the outer reaches 'of a single continuum.' " L.A. Coliseum, 634 F.2d at 1201 (quoting Benda, 584 F.2d at 315). We will examine each of the elements in turn.
 
 1. Probable Success on the Merits
 
 21
 Chalk bases his claim on section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794, as amended (the Act), which provides:
 
 
 22
 No otherwise qualified individual with handicaps ... shall, solely by reason of his handicap, be excluded from the participation in ... or be subjected to discrimination under any program or activity receiving Federal financial assistance ...
 
 
 23
 As the district court recognized, the Supreme Court recently held that section 504 is fully applicable to individuals who suffer from contagious diseases. School Bd. of Nassau County v. Arline, --- U.S. ----, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987).[6] Arline involved a school teacher who was discharged after contracting tuberculosis. She sued the school authorities claiming unlawful discrimination in violation of section 504. The trial court held that although Arline suffered a handicap, she was not a "handicapped person" within the meaning of the Act, stating that it could not "conceive that Congress intended contagious diseases to be included within the definition of a handicapped person." 107 S.Ct. at 1125. Alternatively, the trial court held that even if Arline fell within that definition, she was not "qualified" to teach elementary school. Id. The Court of Appeals for the Eleventh Circuit reversed, holding that persons with contagious diseases were within the Act's coverage. Arline v. School Board of Nassau County, 772 F.2d 759, 764 (11th Cir.1985). The Supreme Court granted certiorari and affirmed the court of appeals in an opinion by Justice Brennan. Chief Justice Rehnquist, joined by Justice Scalia, dissented.
 
 
 24
 In its opinion, the Court addressed the question which is of central importance to this case: under what circumstances may a person handicapped with a contagious disease be "otherwise qualified" within the meaning of section 504? Relying on its earlier opinion in Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the Court said:
 
 
 25
 An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap. In the employment context, an otherwise qualified person is one who can perform "the essential functions" of the job in question. When a handicapped person is not able to perform the essential functions of the job, the court must also consider whether any "reasonable accommodation" by the employer would enable the handicapped person to perform those functions. Accommodation is not reasonable if it either imposes "undue financial and administrative burdens" on a grantee, or requires a "fundamental alteration in the nature of [the] program."
 
 
 26
 Arline, 107 S.Ct. at 1131 n. 17 (citations omitted).
 
 
 27
 In applying this standard to the facts before it, the Court recognized the difficult circumstances which confront a handicapped person, an employer, and the public in dealing with the possibility of contagion in the workplace. The problem is in reconciling the needs for protection of other persons, continuation of the work mission, and reasonable accommodation--if possible--of the afflicted individual. The Court effected this reconciliation by formulating a standard for determining when a contagious disease would prevent an individual from being "otherwise qualified":
 
 
 28
 A person who poses a significant risk of communicating an infectious disease to others in the workplace will not be otherwise qualified for his or her job if reasonable accommodation will not eliminate that risk. The Act would not require a school board to place a teacher with active, contagious tuberculosis in a classroom with elementary school children.
 
 
 29
 Id. at 1131 n. 16.
 
 
 30
 The application of this standard requires, in most cases, an individualized inquiry and appropriate findings of fact, so that "Sec. 504 [may] achieve its goal of protecting handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns of grantees as avoiding exposing others to significant health and safety risks." Id. at 1131. Specifically, Arline requires a trial court to make findings regarding four factors: "(a) the nature of the risk (how the disease is transmitted), (b) the duration of the risk (how long is the carrier infectious), (c) the severity of the risk (what is the potential harm to third parties) and (d) the probabilities the disease will be transmitted and will cause varying degrees of harm." Id. Findings regarding these factors should be based "on reasonable medical judgments given the state of medical knowledge," and courts should give particular deference to the judgments of public health officials. Id.
 
 
 31
 Chalk submitted in evidence to the district court, and that court accepted, more than 100 articles from prestigious medical journals and the declarations of five experts on AIDS, including two public health officials of Los Angeles County. Those submissions reveal an overwhelming evidentiary consensus of medical and scientific opinion regarding the nature and transmission of AIDS. AIDS is caused by infection of the individual with HIV, a retrovirus that penetrates chromosomes of certain human cells that combat infection throughout the body. Individuals who become infected with HIV may remain without symptoms for an extended period of time.[7] When the disease takes hold, however, a number of symptoms can occur, including swollen lymph nodes, fever, weight loss, fatigue and night sweats. Eventually, the virus destroys its host cells, thereby weakening the victim's immune system. When the immune system is in a compromised state, the victim becomes susceptible to a variety of so-called "opportunistic infections," many of which can prove fatal.[8]
 
 
 32
 Transmission of HIV is known to occur in three ways: (1) through intimate sexual contact with an infected person; (2) through invasive exposure to contaminated blood or certain other bodily fluids; or (3) through perinatal exposure (i.e., from mother to infant). Although HIV has been isolated in several body fluids, epidemiologic evidence has implicated only blood, semen, vaginal secretions, and possibly breast milk in transmission. Extensive and numerous studies have consistently found no apparent risk of HIV infection to individuals exposed through close, non-sexual contact with AIDS patients.
 
 
 33
 Based on the accumulated body of medical evidence, the Surgeon General of the United States has concluded:
 
 
 34
 There is no known risk of non-sexual infection in most of the situations we encounter in our daily lives. We know that family members living with individuals who have the AIDS virus do not become infected except through sexual contact. There is no evidence of transmission (spread) of AIDS virus by everyday contact even though these family members shared food, towels, cups, razors, even toothbrushes, and kissed each other.
 
 
 35
 U.S. Public Health Service, Surgeon General's Report on Acquired Immune Deficiency Syndrome at 13 (1986) (hereinafter Surgeon General's Report ). The Surgeon General also specifically addressed the risk of transmission in the classroom setting:
 
 
 36
 None of the identified cases of AIDS in the United States are known or are suspected to have been transmitted from one child to another in school, day care or foster care settings. Transmission would necessitate exposure of open cuts to the blood or other body fluids of the infected child, a highly unlikely occurrence. Even then, routine safety procedures for handling blood or other body fluids ... would be effective in preventing transmission from children with AIDS to other children in school....
 
 
 37
 Casual social contact between children and persons infected with the AIDS virus is not dangerous.
 
 
 38
 Surgeon General's Report at 23-24. These conclusions are echoed by such medical authorities as the United States Centers for Disease Control, the American Medical Association and the Institute of Medicine of the National Academy of Sciences. In its amicus brief in support of Chalk's appeal, the American Medical Association summarized the medical evidence and concluded that "there is no evidence in the relevant medical literature that demonstrates any appreciable risk of transmitting the AIDS virus under the circumstances likely to occur in the ordinary school setting." Amicus Brief of the A.M.A. at 28 (emphasis in original).[9]
 
 
 39
 The only opposing medical opinion submitted by the Department was that of one witness, Dr. Steven Armentrout, that "there is a probability, small though it is, that there are vectors of transmission as yet not clearly defined." Deposition of Armentrout at 919.[10] He elaborated on his opinion as follows:
 
 
 40
 I believe, sincerely believe that there is a significant, and significant here--it's significant even though it's small, potential for transmission of AIDS in ways which we have not yet determined and, therefore, may pose a risk ... If they don't occur now, it is my firm belief that with the almost inevitable mutation of the virus, they will occur. And when that does occur, they certainly could be--there can be a potential threat.
 
 
 41
 Id. at 916-17. Asked whether there was a scientific basis for such a hypothesis, Dr. Armentrout indicated that he had "no scientific evidence that would enable me to answer that or to have an opinion.... What we're saying is that we haven't proved scientifically a vector." Id. at 923.
 
 
 42
 The district judge addressed each of the four Arline factors in his ruling. He found that the duration of the risk was long and the severity was "catastrophic," but that scientifically established methods of transmission were unlikely to occur and that the probability of harm was minimal. Reporter's Transcript, September 8, 1987, at 32-34. He therefore concluded that Chalk "may very well win ultimately." R.T. at 37. Nonetheless, the district judge expressed skepticism about the current state of medical knowledge. He was troubled that there might be something yet unknown to science that might do harm. He said:
 
 
 43
 Now, here, according to present knowledge, the risk probably is not great because of the limited ways that medical science believes the disease is transmitted. But, of course, if it is transmitted the result is horrendous.
 
 
 44
 It seems to me the problem is that we simply do not know enough about AIDS to be completely certain. The plaintiff has submitted massive documentation tending to show a minimal risk.... But in any event, the risk is small--risk of infection through casual contact.... The incubation period is reported to be seven years. We have been studying this only for six. And I do not in any sense mean to be an alarmist. I--I reiterate, I think the risk is small. The likelihood is that the medical profession knows exactly what it's talking about. But I think it's too early to draw a definite conclusion, as far as this case is concerned, about the extent of the risk.
 
 
 45
 R.T. at 33-34 (emphasis added).
 
 
 46
 This language demonstrates that the district court failed to follow the legal standards set forth in Arline and improperly placed an impossible burden of proof on the petitioner. Little in science can be proved with complete certainty, and section 504 does not require such a test. As authoritatively construed by the Supreme Court, section 504 allows the exclusion of an employee only if there is "a significant risk of communicating an infectious disease to others." Arline, 107 S.Ct. at 1131 n. 16 (emphasis added).[11] In addition, Arline admonishes courts that they "should defer to the reasonable medical judgments of public health officials." Id. at 1131. The district judge ignored these admonitions. Instead, he rejected the overwhelming consensus of medical opinion and improperly relied on speculation for which there was no credible support in the record.[12]
 
 
 47
 That Chalk demonstrates a strong probability of success on the merits is supported by the three published opinions brought to our attention dealing with AIDS discrimination under section 504. In Thomas v. Atascadero Unified School Dist., 662 F.Supp. 376 (C.D.Cal.1987), the court granted a preliminary injunction prohibiting the school district from excluding a child with AIDS from the classroom, despite the child's involvement in a biting incident. The court found that:
 
 
 48
 The overwhelming weight of medical evidence is that the AIDS virus is not transmitted by human bites, even bites that break the skin. Based upon the abundant medical and scientific evidence before the Court, Ryan poses no risk of harm to his classmates and teachers. Any theoretical risk of transmission of the AIDS virus by Ryan in connection with his attendance in regular kindergarten class is so remote that it cannot form the basis for any exclusionary action by the School District.
 
 
 49
 662 F.Supp. at 380. Following the entry of the preliminary injunction, the parties in that case stipulated to the entry of a permanent injunction. Id. at 378.
 
 
 50
 In Ray v. School Dist. of DeSoto County, 666 F.Supp. 1524 (M.D.Fla.1987), the court followed Thomas and granted a preliminary injunction prohibiting the district from excluding three seropositive[13] brothers from the classroom. The court rejected the "future theoretical harm" of transmission of the AIDS virus in the classroom as unsupported by the weight of medical evidence. 666 F.Supp. at 1535. Significantly, Dr. Armentrout was one of two doctors who testified for the defendants in Ray, see id. at 1533-34, and his opinion was implicitly rejected.
 
 
 51
 The third case, District 27 Community School Bd. v. Board of Educ., 130 Misc.2d 398, 502 N.Y.S.2d 325 (Sup.Ct.1986), concerned the New York City Board of Education's policy of determining on a case-by-case basis whether the health and development of children with AIDS permitted them to attend school in an unrestricted setting. Two school districts challenged the policy, seeking an injunction prohibiting the Board from admitting any child with AIDS into the classroom. After a five-week trial, the court upheld the policy in an exhaustive opinion. One of the central conclusions was that the transmission of the AIDS virus in the classroom setting was "a mere theoretical possibility" and that exclusion of AIDS victims on that basis would violate section 504. 502 N.Y.S.2d at 335-37.
 
 
 52
 Plaintiff's position is also supported by New York State Ass'n of Retarded Children v. Carey, 612 F.2d 644, 650 (2d Cir.1979), in which the Second Circuit affirmed a district court ruling that the segregation of carriers of hepatitis B by the New York City Board of Education violated section 504. The court said:
 
 
 53
 [T]he Board was unable to demonstrate that the health hazard posed by the hepatitis B carrier children was anything more than a remote possibility. There has never been any definite proof that the disease can be communicated by non-parenteral routes such as saliva. Even assuming there were, the activities that occur in classroom settings were not shown to pose any significant risk that the disease would be transmitted from one child to another.
 
 
 54
 612 F.2d at 650. Chalk presented evidence to the district court here that hepatitis B and AIDS are transmitted in similar ways, but that hepatitis B is transmitted much more easily. See Recommendations for Preventing Transmission of Infection with Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus in the Workplace, 34 Morbidity and Mortality Weekly Report 681 (Nov. 15, 1985).
 
 
 55
 Viewing Chalk's submissions in light of these cases, it is clear that he has amply demonstrated a strong probability of success on the merits. We hold that it was error to require that every theoretical possibility of harm be disproved.
 
 2. Irreparable Injury
 
 56
 Having demonstrated a strong probability of success on the merits, Chalk next had to demonstrate that he was threatened with the possibility of irreparable injury. L.A. Coliseum, 634 F.2d at 1187; Benda, 584 F.2d at 314. The district court held that Chalk's proof on this element was insufficient:
 
 
 57
 I cannot conclude that there is any irreparable injury to plaintiff if he must wait pending trial. He has a job offered and he can do that job until we can determine by medical testimony the extent of the risk and whether or not it's justified for the court to order the school board to put this man back in the classroom. But I cannot--I simply cannot do it on the basis of the present record.
 
 
 58
 R.T. at 37-38.
 
 
 59
 We believe this determination was clearly erroneous. In making its finding, the court focused on the monetary loss to Chalk and concluded that he was no worse off than before the reassignment. This approach failed to consider the nature of the alternative work offered Chalk. Chalk's original employment was teaching hearing-impaired children in a small-classroom setting, a job for which he developed special skills beyond those normally required to become a teacher. His closeness to his students and his participation in their lives is a source of tremendous personal satisfaction and joy to him and of benefit to them. The alternative work to which he is now assigned is preparing grant proposals. This job is "distasteful" to Chalk, involves no student contact, and does not utilize his skills, training or experience. Such non-monetary deprivation is a substantial injury which the court was required to consider. See Finot v. Pasadena City Bd. of Educ., 250 Cal.App.2d 189, 202-03, 58 Cal.Rptr. 520, 529 (1967) (teacher's reassignment from classroom duty to home teaching, imposed in retaliation for an exercise of first amendment rights, was a "legally remediable detriment").
 
 
 60
 Several cases support petitioner's claim that his non-monetary deprivation is irreparable. The most striking parallel is E.E.O.C. v. Chrysler Corp., 546 F.Supp. 54 (E.D.Mich.1982), aff'd, 733 F.2d 1183 (6th Cir.1984), where the court granted a preliminary injunction ordering reinstatement of employees terminated in violation of the Age Discrimination in Employment Act. The court acknowledged that the loss of income and its effects were compensable after trial and did not constitute irreparable harm. 546 F.Supp. at 69-70. Nonetheless, irreparable injury was found in the consequent emotional stress, depression and reduced sense of well-being, which constituted "psychological and physiological distress ... the very type of injury Congress sought to avert." Id. at 70. See also Ray, 666 F.Supp. at 1534 (excluded seropositive children suffered severe emotional distress, including anxiety, feelings of anger, resentment, and fear of social rejection, resulting in minor physiological disorders; irreparable injury found); E.E.O.C. v. City of Bowling Green, 607 F.Supp. 524, 527 (W.D.Ky.1985) (age discrimination resulted in anxiety and emotional problems and an inability to keep up with current matters; irreparable injury found); Oshiver v. Court of Common Pleas, 469 F.Supp. 645, 653 (E.D.Pa.1979) (nervous and emotional problems brought on by age and sex discrimination constituted irreparable injury).
 
 
 61
 Chalk's injury here is quite similar, and it likewise falls within the realm of non-compensable injury which Congress contemplated in enacting section 504. As stated by the Supreme Court in Arline:
 
 
 62
 Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment. Few aspects of a handicap give rise to the same level of public fear and misapprehension as contagiousness. Even those who suffer or have recovered from such noninfectious diseases as epilepsy or cancer have faced discrimination based on the irrational fear that they might be contagious. The Act is carefully structured to replace such reflexive reactions to actual or perceived handicaps with actions based on reasoned and medically sound judgments.
 
 
 63
 Arline, 107 S.Ct. at 1129 (footnotes omitted).
 
 
 64
 The Department argues that a mere "transfer" to a comparable job or location is not irreparable harm, citing L.A. Coliseum. That case is factually quite different. There, the Los Angeles Coliseum Commission sought a preliminary injunction barring the National Football League from enforcing its veto power to prevent the Oakland Raiders from moving to Los Angeles. Two factors demonstrated a lack of irreparable harm. First, plaintiffs had not shown any immediate harm, since the move was still in the negotiation stage and the threatened veto was not imminent. L.A. Coliseum, 634 F.2d at 1201. Second, the injury was not irreparable because only loss of income was at stake, a loss which could be compensated by damages after trial. Id. at 1202.
 
 
 65
 We believe that the discrimination cases cited above provide a more appropriate analogy. Here, plaintiff is not claiming future monetary injury; his injury is emotional and psychological--and immediate. Such an injury cannot be adequately compensated for by a monetary award after trial.
 
 
 66
 An additional factor favoring a preliminary injunction here arises from the very nature of Chalk's affliction. Studies and statistics of etiology and terminus of AIDS show that although the time during which such a person may be quick and productive varies, the virus is fatal in all recorded cases. Presently Chalk is fully qualified and able to return to work; but his ability to do so will surely be affected in time. A delay, even if only a few months, pending trial represents precious, productive time irretrievably lost to him.
 
 
 67
 We therefore conclude that the district court's finding that Chalk had not demonstrated any possibility of irreparable injury was clearly erroneous and must be reversed.
 
 3. The Balance of Hardships
 
 68
 Having demonstrated a strong probability of success on the merits and the possibility of irreparable injury, Chalk has shown all that is necessary for a preliminary injunction to issue. Nonetheless, we will also briefly address the claimed injury on the part of the Department, since "at least a minimal tip in the balance of hardships must be found even when the strongest showing on the merits is made." L.A. Coliseum, 634 F.2d at 1203-04.
 
 
 69
 Even under the balance of hardships standard, plaintiff's injury outweighs any harm to the defendant. Defendant's asserted injury is based entirely on the risk to others posed by plaintiff's return to the classroom. As discussed above, this theoretical risk is insufficient to overcome plaintiff's probability of success on the merits, and it is likewise insufficient to outweigh the injury which plaintiff is likely to suffer. See Ray, 666 F.Supp. at 1535 ("actual, ongoing injury to Plaintiffs ... clearly outweighs the potential harm to others"); cf. Kling v. County of Los Angeles, 633 F.2d 876, 880 (9th Cir.1980) (plaintiff with Crohn's disease denied admission to medical school; denial of preliminary injunction reversed where defendant would suffer no harm pending outcome), on appeal after remand, 769 F.2d 532 (9th Cir.), rev'd on other grounds, 474 U.S. 936, 106 S.Ct. 300, 88 L.Ed.2d 277 (1985).
 
 
 70
 In denying the preliminary injunction, the district court concluded that Chalk's injury was outweighed by the fear that his presence in the classroom was likely to produce:
 
 
 71
 The plaintiff desires to teach despite all these circumstances [i.e., that the results could be "so disastrous if ... by any chance the risk should prove to have been unjustified"]. Counsel has recognized that he doesn't have a constitutional right to do so. On the other hand, he has a statutory right not to be discriminated against. He has a statutory right to go back to the school if he is otherwise qualified.
 
 
 72
 But I think I have a right--in fact, an obligation to compare on the one hand the trauma on the plaintiff if he is held out from the school for a period of months until we can have a trial in this action. The trauma on him, on the one hand, with the trauma on the children and parents in being required to submit to what they are likely to conclude is an unacceptable risk.
 
 R.T. at 35-36.[14]
 
 73
 We recognize that the public interest is one of the traditional equitable criteria which a court should consider in granting injunctive relief. See L.A. Coliseum, 634 F.2d at 1200. Here, however, there is no evidence of any significant risk to children or others at the school. To allow the court to base its decision on the fear and apprehension of others would frustrate the goals of section 504. "[T]he basic purpose of Sec. 504 [is] to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes or ignorance of others." Arline, 107 S.Ct. at 1129. The Supreme Court recognized in Arline that a significant risk of transmission was a legitimate concern which could justify exclusion if the risk could not be eliminated through reasonable accommodation; however, it soundly rejected the argument that exclusion could be justified on the basis of "pernicious mythologies" or "irrational fear." Id. at 1129-30 & n. 12. See also Ray, 666 F.Supp. at 1535:
 
 
 74
 The Court recognizes the concern and fear which is flowing from this small community, particularly from the parents of school age children in DeSoto County. However, the Court may not be guided by such community fear, parental pressure, and the possibility of lawsuits. "These obstacles, real as they may be, cannot be allowed to vitiate the rights ..." of [the Ray children]. New York State Association for Retarded Children, Inc. v. Carey, 466 F.Supp. 479, 485 (E.D.N.Y.1978), aff'd, 612 F.2d 644 (2d Cir.1979).
 
 
 75
 Nonetheless, we recognize that the parties and the district court will have to deal with the apprehensions of other members of the school community, as well as with the inexorable progress of Chalk's disease. Although the time frame is unpredictable, given the current state of medical knowledge, the course of petitioner's condition is reasonably certain. Chalk's immune system will deteriorate over time, leaving him increasingly susceptible to opportunistic infections. These infections do not cause AIDS, nor do they increase the risk of transmission of the AIDS virus, but some of them may themselves be communicable to others in a classroom setting.[15] The district court is in the best position, guided by qualified medical opinion, to determine what reasonable procedures, such as periodic reports from petitioner's doctors, will best give assurance to the Department, the community and the court that no significant risk of harm will arise in the future from Chalk's continued presence in the classroom.CONCLUSION
 
 
 76
 We conclude that petitioner met all of the requirements necessary to receive a preliminary injunction. We therefore reverse the district court's order and remand this action with direction to enter a preliminary injunction ordering defendants forthwith to restore petitioner to his former duties as a teacher of hearing-impaired children in the Orange County Department of Education. This panel will retain jurisdiction over any subsequent appeal.
 
 REVERSED and REMANDED
 SNEED, Circuit Judge, concurring separately:
 
 77
 I concur in Judge Poole's opinion. Confronted with some uncertainties about scientific truth, judges, perhaps above all others, should act on the basis of that which is known, or, where this is not possible, on the basis of that which those best qualified to speak say is known. Judge Poole has set out clearly what those best qualified say they know, and we have no choice but to accept their version of the truth. We can neither await ultimate validation nor reject their version on the basis of our awareness that the truths of medical science are frequently revised in the light of new data.
 
 
 78
 No doubt the possible catastrophic consequences of a substantial alteration of the current truth unduly influenced the district judge. His calculus was impermissibly flawed, however. Chalk, on the basis of current, and perhaps permanent, truth, demonstrated high probability of success, and on the basis of the same truth showed that the balance of hardships tipped sharply in his favor. This was his burden and he successfully carried it.
 
 
 
 [1]
 "Orange County Department of Education" is an informal name which refers to the system of secondary schools run by the office of the Orange County Superintendent of Schools. We will adopt this common usage and refer to the defendant as the Department
 
 
 [2]
 We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(a)(1) (1982)
 
 
 [3]
 HIV (Human Immunodeficiency Virus) is the viral agent that causes AIDS
 
 
 [4]
 Dr. Prendergast did not at that time make any recommendation regarding Chalk's return to work. On August 11, after reviewing Chalk's medical records and the nature of his classroom duties, Dr. Prendergast cleared him to return to work
 
 
 [5]
 Chalk originally filed suit under the name "John Doe." On October 28, Chalk's true name was substituted by stipulation of the parties. On November 18, we ordered the caption of this appeal amended accordingly
 
 
 [6]
 The district court ruled that Doe was handicapped within the meaning of the Act, and the Department does not contest that ruling on appeal. See Arline, 107 S.Ct. at 1127-30 & n. 7. The Department stipulated that it was a program receiving Federal financial assistance and thus subject to the Act
 
 
 [7]
 It is not yet known what percentage of individuals who test positive for HIV will actually develop AIDS, but estimates range between 30 and 90 percent
 
 
 [8]
 The vast majority of opportunistic infections that prey upon AIDS patients are not transmissible to others with uncompromised immune systems. Some opportunistic infections, however, such as tuberculosis, may be communicable in a classroom setting. There is no evidence, nor does the Department contend, that Chalk is currently suffering from any opportunistic infections. If he should later develop a communicable infection, it would, of course, be proper for the Department to treat him as it would any other teacher with a communicable infection. See Arline, 107 S.Ct. at 1131 n. 16, and discussion infra at 711
 
 
 [9]
 Six other entities and two public health officials submitted amicus briefs in support of Chalk's appeal: the State of California, the California Teachers Association, the Disability Rights and Education Fund, the Employment Law Center of the Legal Aid Society of San Francisco, the Los Angeles Unified School District, the Western Law Center for the Handicapped, and Drs. Shirley L. Fannin, M.D. and Martin D. Finn, M.D
 
 
 [10]
 Dr. Armentrout was not deposed in connection with this case. The testimony that the Department submitted was a deposition taken in connection with Racine Educational Association v. Racine Unified School District, Case No. 8650279, Wisconsin Department of Industry, Labor and Human Relations
 
 
 [11]
 Where there is a significant risk, Arline further requires a court to determine if any reasonable accommodation will eliminate that risk. Id. As no significant risk is posed here, this is not a case involving the standards or limits of accommodation and we do not reach those issues
 
 
 [12]
 The district judge recognized the weaknesses in Armentrout's testimony, saying: "It is true that he doesn't document what he believes. It may be just a hunch." R.T. at 34
 
 
 [13]
 "Seropositive" denotes persons who have tested positive for the HIV virus, but who have not yet exhibited symptoms of AIDS
 
 
 [14]
 The district court apparently miscalculated the reaction of at least some of Chalk's students and their parents. The mothers of five of Chalk's students joined amicus Disability Rights Education and Defense Fund in support of Chalk's appeal, and Chalk was greeted with hugs and homemade gifts upon his return to work following our order of November 18. See AIDS Teacher Returns Amid Hugs, Smiles, Los Angeles Times, November 24, 1987, p. 3
 
 
 [15]
 See footnote 8, supra