Robin THOMAS and Judy Thomas individually as the parents of Ryan Thomas, and Guardians, Plaintiffs,

v.

ATASCADERO UNIFIED SCHOOL DISTRICT, and Anthony Avina, Kenneth Beck, Ray King, Carl Brown, Leslie Haynes, Emile LaSalle, Susan Molle and Jean Thiebaud, in their official capacities, Defendants.

No. CV–86–6609–AHS.

United States District Court, C.D. California.

Dec. 31, 1986.

Stipulation and Amended Findings Feb. 19, 1987.

Judgment Granting Permanent Injunction Feb. 20, 1987.

Publication Ordered June 19, 1987.

Paul L. Hoffman, Susan D. McGreivy, Mark D. Rosenbaum, Jon D. Davidson, Kelly Kay, Mickey Wheatley, ACLU Foundation of Southern California, Los Angeles, Cal., for plaintiffs.

Frank J. Fekete, Peter C. Carton, Joanne A. Velman, Stephen L. Hartsell, Dwaine L. Chambers, Roger R. Grass, Bakersfield, Cal., for defendants.

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

STOTLER, District Judge.

Plaintiffs' Motion for Preliminary Injunction came on for hearing on November 17, 1986. Upon the consideration of the arguments and evidence urged in support of, and in opposition to, this Motion, and of the whole record herein, and based upon the Findings of Fact and conclusions of law made herewith:

IT IS HEREBY ORDERED that pending trial of this action, each of the Defendants, his or her successor(s) in office, officers, agents, servants, employees, attorneys, and all other persons acting in concert or participating with them, are prohibited and enjoined from excluding Plaintiffs' son, Ryan Thomas, from attending the kindergarten class which he attended from September 3 to 8, 1986, in the Atascadero Unified School District, unless such exclusion is consistent with 29 U.S.C. § 794 and 45 C.F.R. § 88.-4(b) and occurs in strict compliance with Cal. Education Code § 48213 and due process as required by the United States and California Constitutions. Based on the evidence presented to the Court, Defendants may not exclude or prevent Ryan Thomas from attending his kindergarten class on the ground that he poses a risk of transmission of the AIDS virus to his classmates or teachers.

STIPULATION REGARDING (1) AMENDMENT OF PARTIES (2) SUPPLEMENT TO FINDINGS OF FACT AND CONCLUSIONS OF LAW, (3) SUPPLEMENT TO ORDER GRANTING PRELIMINARY INJUNCTION, AND (4) JUDGMENT GRANTING PERMANENT INJUNCTION

The parties, through their respective counsel, stipulate as follows:

1. Defendants Anthony Avina, Kenneth Beck, Ray King, Carl Brown, Leslie Haynes, Emile LaSalle, Susan Molle and Jean Thiebaud shall be dismissed from this action, without prejudice. The Board of Trustees, Atascadero Unified School District, shall be added as a defendant. Defendant Board of Trustees, Atascadero Unified School District shall be deemed to have been timely served, to have appeared, to have answered the complaint on file in this action, and to be subject to the jurisdiction of the court.

2. Defendants request that the Court supplement the Findings of Fact and Conclusions of Law signed on December 29, 1986, as indicated below. Defendants submit that the Findings should reflect the fact that their actions were based upon guidelines and recommendations concerning the school placement of children infected with the AIDS virus. Without such Findings, the record suggests that the defendants had no rationale for their decisions. Plaintiffs do not object to defendants' making this request; however, they do not join in the request because they believe that the requested additional Findings are not necessary to support the Court's decision. The parties agree to submit this matter to the Court for determination.

Defendants' requested supplementary findings are as follows:

"VI. THE DISTRICT'S RELIANCE ON GUIDELINES REGARDING SCHOOL PLACEMENT OF STUDENTS WITH AIDS.

"24. In August of 1985, the Centers for Disease Control of the United States Government (CDC) published information and recommendations concerning the education of children infected with the AIDS virus. Among the CDC's recommendations are the following:

" '1. Decisions regarding the type of educational and care setting for HTLV–III/LAV–infected children should be based on the behavior, neurologic development, and physical condition of the child and the expected type of interaction with others in that setting. These decisions are best made using the team approach including the child's physician, public health personnel, the child's parent or guardian, and personnel associated with the proposed care or educational setting. In each case, risks and benefits to both the infected child and to others in the setting should be weighed.

" '3. For the infected preschool-aged child and for some neurologically handicapped children who lack control of their body secretions or who display behavior, such as biting, and those children who have uncoverable, oozing lesions, a more restricted environment is advisable until more is known about transmission in these settings. Children infected with HTLV–III/LAV should be cared for and educated in settings that minimize exposure of other children to blood or body fluids.'

"Substantially similar guidelines and recommendations were issued by the American Academy of Pediatrics (AAP) in March of 1986 and the California State Department of Education (SDE) in May of 1986.

"25. The Placement Committee took the recommendations of the CDC into account in its determinations and recommendations regarding Ryan Thomas following the biting incident on September 5, 1986.

"26. Aside from its citation to the recommendations of the CDC, AAP, and SDE, the School District has presented no medical evidence to prove that the AIDS virus can be transmitted by human bites. The information and recommendations published by the CDC, AAP, and SDE cite no such medical evidence and do not, of themselves, prove that transmission by biting is possible."

3. The Order Granting Motion for Preliminary Injunction signed by the Court on December 29, 1986, may, subject to the Court's approval, be amended to insert on page 2 at line 9 after the word "Constitutions." the following sentence: "Nothing in this order shall prohibit the defendants from imposing suspension or expulsion as a means of discipline strictly in accordance with California Education Code Sections 48900 and following."

4. The parties further stipulate that no additional evidence need be presented as to the issues herein considered and that judgment may be entered in this action in favor of plaintiffs and against defendants, (1) granting a permanent injunction in the form of the preliminary injunction previously ordered on December 29, 1986, (2) awarding plaintiffs costs in the amount of $2,387.50, and (3) awarding plaintiffs attorneys' fees in the amount of $40,000.00.

In stipulating to entry of judgment, the parties recognize that defendants claim and reserve the right to move under Federal Rule of Civil Procedure 60(b), or any other applicable provision, for relief from the final judgment in the event that the United States Supreme Court, in the case of *Arline v. School Board of Nassau County*, 772 F.2d 759 (11th Cir.1985), (which has been argued and submitted to that Court), so interprets Section 504 of the Federal Rehabilitation Act of 1973 as to call into question this Court's Conclusions of Law regarding Ryan Thomas' status and defendants' obligations under that statute. The parties further recognize that defendants claim and reserve the right to request, as part of such a motion, that attorneys' fees and costs paid in accordance with the judgment granting permanent injunction be ordered repaid. The parties further recognize that plaintiffs claim and reserve the right to oppose any such motion for relief from final judgment.

## ORDER

The foregoing stipulation is hereby incorporated and made the order of this Court.

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING JUDGMENT GRANTING PERMANENT INJUNCTION

## FINDINGS OF FACT

### I.

### PARTIES

1. Plaintiffs Robin and Judy Thomas are the parents and guardians of Ryan Thomas and bring this action on his behalf. Ryan Thomas is a five year old boy eligible under California law to attend kindergarten in the Atascadero Unified School District.

2. Defendant Atascadero Unified School District ("School District") is a public entity organized under the laws of the State of California. The School District is a recipient of "federal financial assistance" within the meaning of 29 U.S.C. § 794.

3. Defendant Anthony Avina is Superintendent of the School District.

4. Defendants Kenneth Beck, Ray King, Carl Brown, Leslie Haynes, Emile La Salle, Susan Molle and Jean Thiebaud are the current elected members of the Board of Education of the School District ("School District"). The School Board is the governing body of the School District.

### II.

### JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. § 1331 in that plaintiffs' claims arise under 29 U.S.C. § 794.

6. Venue is proper in this court under 28 U.S.C. § 1391(b).

### III.

### RYAN THOMAS' CONDITION

7. Acquired Immune Deficiency Syndrome (AIDS) is the clinical manifestation of a dysfunction of the human immune system caused by a recently discovered virus. The AIDS virus has received several names: Human T–Lymphotropic Virus Type III (HTLV–III); Lymphadenopathy-Associated Virus (LAV); AIDS–Associated Retrovirus (ARV); and, most recently, *Human Immunodeficiency Virus* (HIV).

8. To date, there is no vaccine against or cure for AIDS. A range of symptoms may result from infection with the AIDS virus which have been classified by the Centers for Disease Control ("CDC") into four groups of symptoms: (I) early acute, though transient, signs of the disease; (II) asymptomatic infection; (III) persistent swollen lymph-nodes; and (IV) presence of opportunistic disease and/or rare types of cancer, including one known as Kaposi's Sarcoma.

9. Individuals in all four of the CDC classifications suffer from impairments to their physical systems. Persons infected with the AIDS virus suffer significant impairments of their major life activities. People infected with the AIDS virus may have difficulty caring for themselves, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working, among other life functions. Even those who are asymptomatic have abnormalities in their hemic and reproductive systems making procreation and childbirth dangerous to themselves and others.

10. Ryan Thomas is infected with the AIDS virus. He became infected with the AIDS virus as an infant as the result of a contaminated blood transfusion received at Oakland's Children's Hospital where he was being treated for complications arising out of his premature birth. He suffers from significant impairment of his major life activities.

11. Ryan was diagnosed as being infected with the AIDS virus in early 1985. During the first four years of his life, Ryan Thomas had frequent pulmonary and middle ear problems as well as chronic lymphadenopathy. These difficulties are attributable to his infection with the AIDS virus.

12. For over a year, since the diagnosis that he was infected with the AIDS virus, and since his treatment for this condition began Ryan's medical condition has improved. He has had no recent ear problems. He continues to receive regular treatments from his pediatrician and from

AIDS specialists in Los Angeles to bolster his immune system and prevent other symptoms of AIDS from developing. At this point it is unclear what course his medical condition will take. Both of Ryan's treating physicians, Dr. Fields and Dr. Church, have written to the School District indicating that there is no medical reason why Ryan cannot attend regular kindergarten classes.

## IV.

### RISK OF TRANSMISSION OF THE AIDS VIRUS

13. The best available medical evidence shows that the AIDS virus is not spread in the air by infected droplets as are the common cold, influenza and tuberculosis. The virus is fragile and is killed by most household disinfectants. The virus is transmitted from one person to another only by infected blood, semen or vaginal fluids (and, possibly, mother's milk). Transmission by either semen or blood accounts for virtually all reported cases.

14. There are no reported cases of the transmission of the AIDS virus in a school setting. The CDC has stated that "[n]one of the identified cases of HTLV–III/LAV infection in the United States are known to have been transmitted in the school, day-care, or foster-care setting or through casual person-to-person contact."

15. The overwhelming weight of medical evidence is that the AIDS virus is not transmitted by human bites, even bites that break the skin. Based upon the abundant medical and scientific evidence before the Court, Ryan poses no risk of harm to his classmates and teachers. Any theoretical risk of transmission of the AIDS virus by Ryan in connection with his attendance in regular kindergarten class is so remote that it cannot form the basis for any exclusionary action by the School District.

## V.

### RYAN THOMAS' EXCLUSION FROM CLASS

16. In May, 1986, the School District adopted a policy concerning the admission of students infected with "communicable diseases" including the "HTLV–III (AIDS)" virus. Pursuant to this policy a Placement Committee was created, including health professionals, parents, school officials and San Luis Obispo County's Public Health Officer, to advise the School Board on the placement of children covered by the Policy.

17. On August 28, 1986, the Placement Committee met to make a recommendation concerning Ryan's placement. At this meeting the Committee recommended Ryan's admission to kindergarten. This recommendation was accepted by the School Board on September 2, 1986. No other kindergarten student had his placement considered in this manner. The standard procedure in the District is for a child's parents to decide whether a child of kindergarten age will attend regular kindergarten classes.

18. Ryan attended kindergarten without incident from September 3 to 5, 1986. On September 8, 1986, Ryan was involved in an incident in which another child and Ryan got into a skirmish and Ryan bit the other child's pants leg. No skin was broken.

19. Defendant Avina instructed Plaintiffs to keep Ryan at home after the incident so that the Placement Committee could reconsider its August 28th recommendation in light of this incident and determine "whether or not Ryan's potential for again biting another student poses any danger to the health of others in the class." On September 12, 1986, the Placement Committee recommended that Ryan be evaluated by a psychologist. This recommendation was accepted by the School Board. No similar action was taken concerning the other child involved in this incident.

20. In late September, Dr. Marcus Shira, a psychologist employed by the San Luis Obispo County Board of Education, conducted a "psycho-educational study" of Ryan. Dr. Shira prepared a report dated September 30, 1986, in which he concluded that Ryan would behave "aggressively" in a kindergarten setting because his level of social and language skills and maturity was below those of his classmates. Dr. Shira could not predict what form such

"aggressive" behavior might take. Specifically, he did not predict that Ryan would "bite again."

21. Based upon Dr. Shira's study, on October 2, 1986, the Placement Committee recommended that Ryan be kept out of class and in "home tutoring" for the rest of the academic year. The County Public Health Officer, Dr. Rowland, abstained from this decision. On October 6, 1986, the School Board voted to exclude Ryan from his class until January, 1987, and to have Ryan evaluated before the decision to exclude him would be reconsidered.

22. Ryan suffered injury because of his exclusion from his kindergarten class after September 8, 1986, even though his injuries were not as great as they would have been if he was an older child.

23. In taking the actions outlined above, the School District acted cautiously and reasonably in attempting to balance all of the interests involved and to address the fear of AIDS which exists within the Atascadero community.

## VI.

### THE DISTRICT'S RELIANCE ON GUIDELINES REGARDING SCHOOL PLACEMENT OF STUDENTS WITH AIDS

24. In August of 1985, the Centers for Disease Control of the United States Government (CDC) published information and recommendations concerning the education of children infected with the AIDS virus. Among the CDC's recommendations are the following:

"'1. Decisions regarding the type of educational and care setting for HTLV–III/LAV–infected children should be based on the behavior, neurologic development, and physical condition of the child and the expected type of interaction with others in that setting. These decisions are best made using the team approach including the child's physician, public health personnel, the child's parent or guardian, and personnel associated with the proposed care or educational setting. In each case, risks and benefits to both the infected child and to others in the setting should be weighed.'"

"'3. For the infected preschool-aged child and for some neurologically handicapped children who lack control of their body secretions or who display behavior, such as biting, and those children who have uncoverable, oozing lesions, a more restricted environment is advisable until more is known about transmission in these settings. Children infected with HTLV–III/LAV should be cared for and educated in settings that minimize exposure of other children to blood or body fluids.'"

Substantially similar guidelines and recommendations were issued by the American Academy of Pediatrics (AAP) in March of 1986 and the California State Department of Education (SDE) in May of 1986.

25. The Placement Committee took the recommendations of the CDC into account in its determinations and recommendations regarding Ryan Thomas following the biting incident on September 5, 1986.

26. Aside from its citation to the recommendations of the CDC, AAP, and SDE, the School District has presented no medical evidence to prove that the AIDS virus can be transmitted by human bites. The information and recommendations published by the CDC, AAP, and SDE cite no such medical evidence and do not, of themselves, prove that transmission by biting is possible.

## CONCLUSIONS OF LAW

1. The Defendant School District is a recipient of federal funds within the meaning of 29 U.S.C. § 794, § 504 of the Federal Rehabilitation Act of 1973.

■ 2. Ryan Thomas is a "handicapped person" within the meaning of § 504 of the Rehabilitation Act of 1973. *See* 45 C.F.R. § 84.3(j)(2)(ii). *District 27 School Board v. Board of Education*, 130 Misc.2d 398, 502 N.Y.S.2d 325 (1986).

■ 3. Ryan Thomas is "otherwise qualified" to attend a regular kindergarten class within the meaning of § 504 of the Rehabilitation Act of 1973. Defendants have failed to meet their burden of demonstrating that Ryan is not "otherwise qualified" to attend kindergarten. *New York*

*State Association for Retarded Children v. Carey,* 612 F.2d 644 (2d Cir.1979); *Pushkin v. Regents of University of Colorado,* 658 F.2d 1372, 1387 (10th Cir.1981). There is no evidence that Ryan Thomas poses a significant risk of harm to his kindergarten classmates or teachers.

4. Ryan Thomas has been subjected to different treatment from the treatment received by other kindergarten students in the District and excluded from his kindergarten class because of his "handicap."

5. Defendants have not complied with the requirements of 45 C.F.R. § 88.4(b). In particular, Defendants have not complied with the requirement that "[a] recipient shall place a handicapped person in the regular educational environment created by the recipient unless it is demonstrated by the recipient that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily."

6. Based on the foregoing, Plaintiffs are likely to succeed on the merits. Ryan Thomas has suffered irreparable injury because of his exclusion from class. There are serious questions presented by Plaintiff's Motion and the balance of hardships tips in Plaintiff's favor. Plaintiffs are entitled to the issuance of a preliminary injunction under the standards applied in this Circuit. *Los Angeles Memorial Coliseum Com'n v. Nat'l Football League,* 634 F.2d 1197, 1200–01 (9th Cir.1980). *See also Martin v. International Olympic Committee,* 740 F.2d 670, 674–75 (9th Cir.1984); *Lopez v. Heckler,* 725 F.2d 1489, 1494 n. 2 (9th Cir.1984).

7. The Court does not reach the other claims made by Plaintiffs.

### JUDGMENT GRANTING PERMANENT INJUNCTION

Based upon all of the evidence filed in connection with Plaintiffs Motion for a Preliminary Injunction and upon the stipulation regarding (1) amendment of parties; (2) supplement to findings of fact and conclusions of law; (3) supplement to order granting permanent injunction:

IT IS HEREBY ORDERED that each of the Defendants, his or her successor(s) in office, officers, agents, servants, employees, attorneys, and all other persons acting in concert or participating with them, are prohibited and enjoined from excluding Plaintiffs' son, Ryan Thomas, from attending the kindergarten class which he attended from September 3 to 8, 1986, in the Atascadero Unified School District, unless such exclusion is consistent with 29 U.S.C. § 794 and 45 C.F.R. § 88.4(b) and occurs in strict compliance with Cal. Education Code § 48213 and due process as required by the United States and California Constitutions. Nothing in this Order shall prohibit the defendants from imposing suspension or expulsion as a means of discipline strictly in accordance with California Education Code Sections 48900 and following. Based on the evidence presented to the Court, Defendants may not exclude or prevent Ryan Thomas from attending his kindergarten class on the ground that he poses a risk of transmission of the AIDS virus to his classmates or teachers.

Plaintiffs are, awarded the amount of $40,000.00 in attorneys fees and $2,387.50 in costs.

### ORDER DIRECTING PUBLICATION OF

(1) ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION;

(2) STIPULATION REGARDING

1) AMENDMENT OF PARTIES,

2) SUPPLEMENT TO FINDINGS OF FACT AND CONCLUSIONS OF LAW,

3) SUPPLEMENT TO ORDER GRANTING PRELIMINARY INJUNCTION, AND

4) JUDGMENT GRANTING PERMANENT INJUNCTION;

(3) AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING JUDGMENT GRANTING PERMANENT INJUNCTION; AND

(4) JUDGMENT GRANTING PERMANENT INJUNCTION

On December 29, 1986, the Court issued its Order Granting Plaintiffs' Motion for

Preliminary Injunction in this action and the Findings of Fact and Conclusions of Law relevant thereto. The Court enjoined all defendants from excluding plaintiffs' son from attending his kindergarten class on the ground that he posed a risk of transmission of the AIDS virus to his classmates or teachers. The Court declined to rule on numerous constitutional and state-based claims, electing to address plaintiffs' contention that their son was handicapped within the broad definition furnished by federal statute.

Under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1986), a handicapped person is one who has a physical or mental impairment which substantially limits one or more of his major life activities, as well as any person with a record of, or who is regarded as having, such an impairment. The terms "physical impairment" and "major life activities" are further defined by regulations. Under those regulations, a physical impairment includes "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; ..." 45 C.F.R. § 84.3(j)(2)(i)(A) (1985).

The minor child's impairments described in the factual findings were attributable to his infection with the AIDS virus. The inevitable conclusion was that the Rehabilitation Act conferred statutory protections on plaintiffs' son.

Subsequently, the parties submitted for the Court's consideration a stipulation agreeing to 1) the entry of judgment in favor of plaintiffs, granting a permanent injunction providing the same relief and in the form of the preliminary injunction previously ordered on December 29, 1986, and awarding plaintiffs costs and attorneys' fees, 2) the supplementation of the Findings of Fact and Conclusions of Law issued in conjunction with the Order Granting Preliminary Injunction, and 3) the dismissal of the individual defendants from this action without prejudice and the addition of the Board of Trustees, Atascadero Unified School District as a defendant. On February 19, 1987 the Court endorsed this stipulation and filed Amended Findings of Fact and Conclusions of Law Regarding Judgment Granting Permanent Injunction. The Court formally entered the Judgment Granting Permanent Injunction on February 20, 1987.

Concerned with the need for the litigants and their community at large to return to as peaceful a status quo as possible, the Court did not envision a published account of the case. Because of the repeated expression of public interest in the facts of this case and this Court's interpretation of § 504 of the Federal Rehabilitation Act of 1973 as applied to those facts, the Court hereby authorizes publication of pertinent portions of the record.* The following pleadings shall be published in the order stated: (1) Order Granting Motion for Preliminary Injunction; (2) Stipulation Regarding 1) Amendment of Parties, 2) Supplement to Findings of Fact and Conclusions of Law, 3) Supplement to Order Granting Preliminary Injunction, and 4) Judgment Granting Permanent Injunction; (3) Amended Findings of Fact and Conclusions of Law Regarding Judgment Granting Permanent Injunction; and (4) Judgment Granting Permanent Injunction.

---

* For accuracy's sake, the Court notes that all references to 45 C.F.R. § 88.4(b) should be re-placed with 45 C.F.R. § 84.34(a).