Eliana **MARTINEZ, By and Through her next friend, Rosa E. MARTINEZ, her mother, Plaintiff–Appellant,**

v.

**SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA, a corporate body public, Defendant–Appellee.**

No. 88–3667.

United States Court of Appeals, Eleventh Circuit.

Dec. 1, 1988.

Stephen F. Hanlon, Tampa, Fla., for plaintiff-appellant.

Alice K. Nelson, Southern Legal Counsel, Inc., Albert J. Hadeed, Gainesville, Fla., amicus curiae Advocacy Center for Person with Disabilities, Inc.

W. Crosby Few, Tampa, Fla., Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, Tampa, Fla., for defendant-appellee.

Before VANCE and KRAVITCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

VANCE, Circuit Judge:

This case involves the appropriate educational placement of a mentally retarded child infected with the human immunodeficiency virus, the virus that causes Acquired Immunodeficiency Syndrome (AIDS). Appellant, Eliana Martinez, is seven years old and has an I.Q. of 41. This classifies her as a trainably mentally handicapped child. Eliana was born prematurely and received thirty-nine blood transfusions in the first four months of life. In April 1985 Eliana was diagnosed as suffering from AIDS Related Complex. She now is in the late stages of AIDS but her condition has been stabilized for several months. The court below found that Eliana is not toilet trained and suffers from thrush, a disease that can produce blood in the saliva. Eliana sucks her thumb and forefinger frequently, resulting in saliva on her fingers. In the past Eliana has suffered from skin lesions. When these occurred, Mrs. Rosa Martinez, her adoptive mother, has kept her at home.

In the summer of 1986, Mrs. Martinez attempted to enroll Eliana in the special classroom for trainably mentally handicapped ("TMH") children in the public school system of Hillsborough County, Florida. Based on the recommendation of an interdisciplinary review team, the Hillsborough County School Board decided that the appropriate educational placement for Eliana was homebound instruction. Mrs. Martinez requested an administrative hearing, pursuant to the Education of the Handicapped Act, 84 Stat. 175 (1970) (codified as amended by the Education for All Handicapped Children Act, 89 Stat. 775 (1975), at 20 U.S.C. §§ 1401–1461 (1982)) ("EHA"), to review the board's decision. On August 25, 1987, a hearing officer of the Florida Division of Administrative Hearings upheld the school board's decision. Having exhausted the administrative remedies prescribed under the EHA, Mrs. Martinez brought this action on behalf of

Eliana challenging the hearing officer's determination. She alleged that the board's decision violated Eliana's rights under the EHA, section 504 of the Rehabilitation Act of 1973, 87 Stat. 394 (1973) (codified as amended at 29 U.S.C. § 794 (1982)), and the equal protection clause of the fourteenth amendment.

The case was tried without a jury on July 13 and 14, 1988. At trial Mrs. Martinez argued that Eliana should be admitted to the TMH classroom. She contended that the following reasonable accommodations could reduce the risk of transmission: requiring Eliana to maintain a distance from other children; assigning a full-time aide to assist with health precautions; placing Eliana with non-ambulatory TMH students; using disposable diapers and a separate potty chair for toilet training; limiting the number of students in the classroom; and using gloves, disinfectants, and other precautions in handling and disposing of waste materials. The school board argued that homebound placement was proper because Eliana is incontinent and mouths her fingers. It contended that because many of the mentally handicapped children do not have control over their bodily functions, there is an unacceptable risk of transmission of the AIDS virus to other children and of transmission of communicable diseases from the other children to Eliana.

The district court heard extensive expert testimony on the risk of transmission. It found that there was a "remote theoretical possibility" of transmission of the AIDS virus through tears, saliva and urine. It held that the most appropriate educational placement for Eliana is as follows: Eliana will be taught in a separate room to be constructed in the TMH classroom with a large glass window and sound system to allow Eliana to see and hear the students in the main classroom. A full-time aide will remain in the room with Eliana and attempt to toilet train her and teach her not to mouth her fingers. Another child can enter the room only if a waiver is obtained from the child's parents absolving the school board from liability. Eliana can be taught in the main classroom when she becomes toilet trained and no longer places

her fingers in her mouth. At that time, a full-time aide will ensure that an appropriate distance between Eliana and other children is maintained. The school nurse will be available for consultation if questions arise as to the advisability of Eliana being in the classroom on a certain day. 692 F.Supp. 1293.

Mrs. Martinez appealed the trial court's decision. We vacate and remand for further proceedings consistent with this opinion.

Two overlapping federal statutes establish the framework for determining appropriate educational placement for handicapped children—the Education of the Handicapped Act (the "EHA"), and section 504 of the Rehabilitation Act of 1973 ("section 504"). In the Handicapped Children's Protection Act of 1986, Congress affirmed that the EHA was not intended to supplant rights otherwise available to handicapped children under the Rehabilitation Act. The Supreme Court had held that the EHA was the exclusive remedy for equal protection claims to a public education. *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). In response Congress enacted the Handicapped Children's Protection Act of 1986, 100 Stat. 796, 797 (1986) (codified as amended at 20 U.S.C.A. § 1415(f) (West Supp. 1988)), which added the following provision to the EHA:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 ... or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C.A. § 1415(f) (West Supp.1988). *See* 132 Cong.Rec. S9279 (daily ed. July 17, 1986) (statement of Sen. Simon) (1986 Act "will restore the intended protections

[of the EHA] to all handicapped children.... The enactment [of the EHA] in no way deprived handicapped children of existing constitutional and statutory provisions protecting their rights.")

When the EHA and section 504 are read together, a complementary set of standards emerges to determine the appropriate educational setting for a handicapped child. The EHA requires participating states to provide a "free appropriate public education" to handicapped children. 20 U.S.C. § 1412(2)(B) (1982). Educational authorities must develop an individualized educational program stating the educational program and setting forth specific goals for each handicapped child. The EHA sets forth an administrative procedure whereby parents who do not agree with the educational placement of their child can request a due process hearing conducted by the state or local educational agency. *Id.* § 1415(b)(2). If the hearing is before a local or intermediate educational entity, either party may appeal to the state educational agency for an impartial review. After exhausting this administrative procedure, either party may bring a civil action in state or federal court. The court will review the records of the administrative proceedings and, at the request of a party, hear additional evidence. Under the EHA, the trial court must first determine if the state has complied with the procedures prescribed under that statute. *Board of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982). These procedures include the requirement that

> to the maximum extent appropriate, handicapped children ... are [to be] educated with children who are not handicapped, and that special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily....

20 U.S.C. § 1412(5)(B). *See Department of Educ. v. Katherine D.*, 727 F.2d 809 (9th Cir.1983), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985). This is referred to as the "least restrictive environment" requirement. *See* 34 C.F.R. §§ 300.-550–.556 (1987). Second, the court must determine whether the educational program developed by the state was "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207, 102 S.Ct. at 3051. The court then may "grant such relief as [it] determines appropriate," based on the preponderance of the evidence. 20 U.S.C. § 1415(e)(2) (1982).

Section 504 of the Rehabilitation Act more broadly provides:

> No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794 (1982). In considering whether an exclusion is prohibited by section 504, a trial judge must first determine whether the individual is "otherwise qualified." When a person is handicapped with a contagious disease this task requires the judge to conduct an individualized inquiry and to make appropriate findings of fact, "based on reasonable medical judgments ... about (a) the nature of the risk (how the disease is transmitted), (b) the duration of the risk (how long is the carrier infectious), (c) the severity of the risk (what is the potential harm to third parties) and (d) the probabilities the disease will be transmitted and will cause varying degrees of harm." *School Bd. v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307 (1987). As a second step the court must evaluate whether reasonable accommodations would make the handicapped individual otherwise qualified. *Id.*

When a child with an infectious disease seeks relief under both the EHA and section 504 of the Rehabilitation Act, the relationship between these two statutory frameworks is particularly intricate. The

trial judge must first determine the most appropriate educational placement for the handicapped child under EHA procedures. Next, the court must determine whether the child is otherwise qualified within the meaning of section 504 to be educated in this setting, despite the communicable disease. *See Arline,* 107 S.Ct. at 1131 n. 16. If not, the court must consider whether reasonable accommodations could reduce the risk of transmission so as to make the child otherwise qualified to be educated in that setting. In considering accommodations that would make the child "otherwise qualified," the court must bear in mind the requirement that to the maximum extent appropriate, the child is to be educated in the least restrictive environment.

Eliana is entitled to a free appropriate public education under the EHA. She suffers from two handicaps under section 504 of the Rehabilitation Act: she is mentally retarded and has AIDS; each condition results in a "physical or mental impairment which substantially limits one or more major life activities." 45 C.F.R. § 84.3(j)(1)(i) (1987). *See Arline v. School Bd.,* 772 F.2d 759, 764 (11th Cir.1985) *aff'd* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). Applying the standards under these two statutes to the facts of this case, the trial court first had to determine the most appropriate educational placement for Eliana under the EHA. Next, it had to consider whether Eliana was otherwise qualified to be educated in this setting. If the trial court found that Eliana was not otherwise qualified, it then had to consider whether reasonable accommodations would make her so. If, after reasonable accommodations, a significant risk of transmission would still exist, Eliana would not be otherwise qualified. *See Arline,* 107 S.Ct. at 1131 n. 16.

As the parties agreed, the appropriate educational placement for Eliana under the EHA would be the regular TMH classroom if she did not suffer from AIDS. This presented the question whether the exclusion of Eliana from that setting is unlawful under section 504. In conducting this inquiry, the trial court had to determine whether Eliana was otherwise qualified to be educated in the regular TMH classroom. The trial court found a "remote theoretical possibility" of transmission with respect to tears, saliva and urine. This does not rise to the "significant" risk level that is required for Eliana to be excluded from the regular TMH classroom. *See Arline,* 107 S.Ct. at 1131, n. 16; *Chalk v. United States Dist. Court,* 840 F.2d 701, 707–08 (9th Cir.1988); *New York State Ass'n for Retarded Children, Inc. v. Carey,* 612 F.2d 644, 650 (2d Cir.1979); *Thomas v. Atascadero Unified School Dist.,* 662 F.Supp. 376, 380 (C.D.Cal.1987). The court below made no findings with respect to the overall risk of transmission from all bodily substances, including blood in the saliva, to which other children might be exposed in the TMH classroom. Accordingly, we remand with directions that the trial court make findings as to the overall risk of transmission so that it can determine whether Eliana is otherwise qualified to attend classes in the TMH classroom.

If the risk of transmission supports a finding that Eliana is not "otherwise qualified" to attend classes with the other children in the TMH classroom, the court must consider whether reasonable accommodations would make her so. In evaluating possible accommodations, a trial court must consider the effect of each proposed accommodation on the handicapped child and the institution. *See Carey,* 612 F.2d at 650–51. The court must be guided by the requirement that, to the maximum extent appropriate, these accommodations place the child in the least restrictive environment that would make the child otherwise qualified. Additionally, the court must consider the financial burden the accommodation would impose on the institution. *See Southeastern Community College v. Davis,* 442 U.S. 397, 412, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979) (accommodation not reasonable if it imposes "undue financial and administrative burdens").

Under the EHA a trial court enjoys discretion to determine appropriate placement consistent with these goals based on the evidence before it and giving "due weight" to state administrative procedures. *See Rowley,* 458 U.S. at 206, 102 S.Ct. at 3050–51. Central to the administrative framework under the EHA is the requirement that relief be tailored to the particular

needs of each child.[1]  Accordingly, a trial court must base its remedial decision on evidence of the probable effect of a proposed accommodation on the child.  The record below contains no findings with respect to the effect on Eliana of isolating her with an aide in a separate room in the TMH classroom.  On remand, the court must hear evidence concerning the effect of any accommodation that would be reasonable based upon the risk of transmission.  This evidence must, at the minimum, relate to the effect of the proposed remedy on her psychological and educational development.  *See, e.g., Carey,* 612 F.2d at 651 (discussing stigmatizing effect of separation from other children).

We vacate the judgment of the district court and remand the case so that the district court may make the further required findings.  The district court should receive such additional evidence as it deems necessary in light of such requirements.  It should thereafter enter such judgment as is appropriate.

VACATED and REMANDED with instructions.

---

1. The individual nature of relief is emphasized throughout the EHA and accompanying regulations.  A public agency "in selecting the least restrictive environment [shall consider] any potential harmful effect on the child or on the quality of services which he or she needs."  34 C.F.R. § 300.552 (1987).  The comment to this regulation makes clear that "[t]he overriding rule in this section is that placement decisions must be made on an individual basis."  *Id.*