566 A.2d 285

**M.A.E. Administratrix of the Estate of J.J.E., Appellant,**

v.

**DOE & ROE, Owners of a Restaurant, Appellees.**

Superior Court of Pennsylvania.

Argued June 20, 1989.

Filed Nov. 13, 1989.

590

Michael J. Holston, Philadelphia, for appellant.

Mark A. Ciavarella, Jr., Wilkes–Barre, for appellees.

Before CAVANAUGH, McEWEN and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Luzerne County sustaining preliminary objections in the nature of a demurrer and dismissing appellant's complaint. J.J.E., appellant, filed a complaint alleging tortious discrimination against his employer, Doe & Roe, owners of a restaurant, for wrongful termination of employment. Appellant contends he was discharged from his job for being homosexual and contracting Acquired Immune Deficiency Syndrome, *i.e.,* AIDS. Appellant claims this is against public policy.

The recent Pennsylvania Supreme Court decision in *Clay v. Advanced Computer Applications, Inc.,* 370 Pa.Super. 497, 536 A.2d 1375 (1988), *allocatur granted,* 518 Pa. 647, 544 A.2d 959 (1988), *rev'd in part,* 522 Pa. 86, 559 A.2d 917 (1989), is on point. The Court stated that the intended forum for addressing grievances of this sort is the Pennsylvania Human Relations Commission. There was no intent to give broad, unrestricted access to civil actions, outside the Pennsylvania Human Relations Act, alleging discriminatory termination of at-will employment. Appellant's failure to exercise the proper method for addressing his grievances forecloses him from pursuing judicial recourse.

The judgment of the lower court is affirmed.

CAVANAUGH, J., files a concurring statement.

CAVANAUGH, Judge, concurring.

I agree with Judge Popovich that the Supreme Court's holding in *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917 (1989) is controlling. However, I write separately to enlarge upon the reasoning implicit in Judge Popovich's conclusions.

Appellant has sought to bring an action which is cognizable under the Pennsylvania Human Relations Act (PHRA), 43 Pa.C.S.A. 951 *et seq.*, and which, indeed, relies upon its provisions to evince a public policy appellant claims was violated by termination of his at-will employment. Instead of invoking the aid of Pennsylvania Human Relations Commission (PHRC), the forum designated by the PHRA as having exclusive primary jurisdiction of PHRA grievances, appellant incorrectly brought suit in the court of common pleas. For this reason dismissal was proper.

Appellant has alleged that he was discharged for being homosexual and for having AIDS (Acquired Immune Deficiency Syndrome). Construing the allegations of the complaint in the light most favorable to the plaintiff, it can be fairly said that there exists an issue of fact as to whether appellant was fired for either or both reasons.

Appellant relies exclusively upon the PHRA to establish a public policy which would forbid discrimination against homosexuals or against persons suffering from AIDS. The fact that appellant has relied upon the PHRA to establish the relevant public policy which would forbid termination of his at-will employment situates this case firmly within the *Clay* exception to the courts' jurisdiction of claims for wrongful termination of at-will employment which violates public policy. Moreover, it seems clear that the PHRC was a proper forum available to appellant under the PHRA, at least with respect to discharge based on the fact that he had AIDS.[1]

AIDS and its related conditions fall under the protected category of handicap or disability under the PHRA. *See,* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission Policy Directive: Reaffirmation of the PHRC's AIDS Policy, Policy No. 88–01 (June 2, 1988) (Pennsylvania Human Relations Commission considers AIDS a

---

1. Since it seems fairly clear that AIDS can be a non-job related disability under the PHRA, we need not reach the issue of whether the Act also protects individuals against discrimination on the basis of sexual orientation.

handicap or disability within the meaning of the Act). Even if an AIDS sufferer or member of a high risk group is not presently impaired in a manner which limits a major life activity, the perceptions or attitudes of others towards these individuals can itself constitute an impairment which suffices to place these individuals within the protections afforded by the Act. For this reason, PHRA implementing regulations define "handicapped individual" as one regarded as having a physical or mental impairment limiting a major life activity, treated as having an impairment, or having an impairment which limits a major life activity solely as a result of the attitudes of others. 16 Pa.Code section 44.4. The latter instance would arise where an individual is prevented from working solely because of the prejudices and misapprehensions of employers or the public towards individuals with AIDS.

The uniform position of the courts in construing antidiscrimination legislation similar to the PHRA has also been that AIDS and HIV infection is a disability or handicap and thus an unlawful basis of discrimination. *Chalk v. U.S. District Court*, 840 F.2d 701 (9th Cir.1988) (under Federal Rehabilitation Act, school teacher with AIDS must be permitted to continue teaching subject only to reasonable procedures which safeguard against risk of communicating secondary or "opportunistic" infections; unsubstantiated fears cannot serve to justify discrimination on the basis of AIDS infection); *Martinez v. School Bd.*, 861 F.2d 1502 (11th Cir.1988); *Thomas v. Atascadero Unified School District*, 662 F.Supp. 376 (C.D.Cal.1986). *See, School Board v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (Federal Rehabilitation Act forbids discrimination on basis of contagious disease; standard for determining when a contagious disease prevents an individual from being otherwise qualified for the employment is whether there is a significant risk of communicating the disease in the workplace without the possibility of reasonable accommodations which would eliminate that risk).

Thus, appellant could have brought his claim under the PHRA, utilizing the procedures specified in the Act. Unfortunately, he did not. Nor did he seek relief under an alternative statutory or common law remedy (other than one resting entirely on the PHRA) which would permit him to bring suit in the court of common pleas initially. Under *Clay*, therefore, dismissal of the case was proper.