578 A.2d 975

**John Mark RODLAND, Appellant,**

v.

**METROPOLITAN PROPERTY AND LIABILITY
INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 24, 1990.

Filed Aug. 31, 1990.

Lawrence Sager, Pottstown, for appellant.

Michael O'Hayer, Paoli, for appellee.

Before CIRILLO, President Judge, and WIEAND and BROSKY, JJ.

WIEAND, Judge:

On October 14, 1984, John Mark Rodland made application to Metropolitan Property and Liability Insurance Company (Metropolitan) for a policy of automobile insurance. In connection therewith, he certified that his answers to questions were true and correct and paid a premium for the quarterly period from October 15, 1984 to January 15, 1985. Approximately a month later, Metropolitan sent Rodland notice of cancellation, effective December 9, 1984, and included a check in the amount of $58.50, which represented a pro rata refund of the quarterly premium. The reason for the cancellation of the policy was an undisclosed prior record of traffic violations which included convictions for speeding and failure to stop for a red light. Although the cancellation notice advised Rodland that he had a right to obtain a review of the policy's cancellation by the Insurance Commissioner, Rodland elected not to challenge the cancellation of the policy. Instead, he cashed Metropolitan's refund check on December 7, 1984. On December 17, 1984, he was involved in a vehicular accident in which he sustained personal injuries.

Rodland then filed a civil action against Metropolitan to recover no-fault benefits. He contended that the notice of cancellation had been improper and that, in any event, Metropolitan was estopped from cancelling the policy because it had knowledge that at the time of purchasing the policy he, Rodland, had surrendered his coverage with another insurance company. Following trial, a jury found in response to special interrogatories that it had not been represented to Rodland at the time of purchasing the policy that it was non-cancellable and that Rodland had, in fact, received the written notice of cancellation sent by Metropolitan. These findings were molded into a verdict for the defendant insurer. When Rodland filed post-trial motions,

however, the trial court concluded that only the Insurance Commissioner had jurisdiction to determine whether the Metropolitan policy had been properly cancelled. Therefore, the court vacated the verdict and dismissed Rodland's complaint. Rodland appealed. He argues that the trial court erred when it determined that it lacked jurisdiction to decide the case.

■ The legislature has provided in the Act of June 5, 1968, P.L. ——, No. 78, § 8, as amended, 40 P.S. § 1008.8(a), that

> Any insured may within twenty days of the receipt by the insured of notice of cancellation or notice of intention not to renew, and of the receipt of the reason or reasons for the cancellation or refusal to renew as stated in the notice, request in writing to the Insurance Commissioner that he review the action of the insurer in cancelling or refusing to renew the policy of such insured.

The cancelling insurance company is required to give notice to its insured of this provision. See: Act of June 5, 1968, § 6, *supra*, as amended, 40 P.S. § 1008.6. In conducting such a review, the Insurance Commissioner can be called upon to determine whether, in cancelling the policy, the insurer acted properly and complied with the conditions for cancellation set forth in section 5 of the statute. There is nothing in the statute, however, which purports to make review by the Commissioner a condition precedent to an action to recover under a policy of insurance which has been alleged by the claimant to have been cancelled ineffectively by the insurer.

The trial court's reliance on *Metropolitan Property & Liability Insurance Co. v. Insurance Commissioner*, 517 Pa. 218, 535 A.2d 588 (1987), is misplaced. There, the insurer attempted to rescind a policy of automobile insurance because the applicant had misrepresented his driving record. The opinion announcing the judgment of the Court was authored by Mr. Justice McDermott and was joined by one other member of the Court. They reasoned that the statutory procedure was the exclusive means by which an

insurance company could terminate a policy of insurance and that unilateral rescission by the insurer because of a material misrepresentation by the insured was no longer an available remedy. Because this view did not gather a majority of the Court, it is not precedential. Three justices held that rescission was inappropriate in that case because the misrepresentation by the applicant had not been material. A fourth justice concurred in the result. Neither the opinion announcing the decision of the Court nor the concurring opinion suggested that the Insurance Commissioner had exclusive jurisdiction to determine whether a policy of insurance had been properly cancelled.

■ In the instant case, Metropolitan acted according to the terms of the statute to notify Rodland that his policy was being terminated and returned to him the unused portion of the premium which he had paid. Rodland was also given notice that he could obtain a review of Metropolitan's decision to terminate by written request directed to the Insurance Commissioner within twenty days after receipt of the notice of cancellation. Rodland, however, elected to cash the refund check and did not request a review of the insurer's action to terminate. Under these circumstances, the policy of insurance was validly cancelled, and the trial court had jurisdiction to make such a determination. See: *Stevens v. Kemper Insurance Co.*, 384 Pa.Super. 263, 558 A.2d 113 (1989), *allocatur denied*, 523 Pa. 646, 567 A.2d 650 (1989).

It follows that the trial court erred when it held that it lacked jurisdiction to hear the instant litigation and dismissed appellant's complaint. However, appellant has advanced no other argument in this appeal. He has not challenged in any way the special findings of the jury which resulted in a verdict for the defendant insurer. That verdict, being jurisdictionally proper, will be reinstated.

The order of the trial court dismissing appellant's complaint for lack of jurisdiction is reversed, and the verdict in favor of the defendant is reinstated.

CIRILLO, President Judge, files a dissenting opinion.

CIRILLO, President Judge, dissenting.

I respectfully dissent. I believe that the legislature, by establishing a comprehensive statutory scheme to regulate the cancellation of automobile insurance policies, and by creating an insurance commission, intended to vest exclusive initial jurisdiction to determine the propriety of an insurance company's cancellation of automobile insurance with the Insurance Commissioner. Therefore, contrary to the majority, it is my opinion that the trial court was without jurisdiction to determine whether Metropolitan properly cancelled Rodland's insurance.

Act 78, 40 P.S. § 1008.1 *et seq.*,[1] governs all aspects of an insurer's cancellation of an insured's automobile insurance policy. Section 1008.4 enumerates the grounds on which the insurer can cancel an insured's policy. 40 P.S. § 1008.4(1)–(3). The proper procedures to effectively cancel an automobile insurance policy are set forth in section 1008.5. 40 P.S. § 1008.5(1)–(7). Act 78 also provides for review of a decision to cancel an automobile insurance policy. 40 P.S. § 1008.8. Section 1008.8 states, in pertinent part:

> Any insured may within twenty days of the receipt by the insured of notice of cancellation or notice of intention not to renew, and of the receipt of the reason or reasons for the cancellation or refusal to renew as stated in the notice, request in writing to the Insurance Commissioner that he review the action of the insurer in cancelling or refusing to renew the policy of such insured.

40 P.S. § 1008.8(a). If either the insured or the insurer is not satisfied with the Insurance Commissioner's review, that party has the right to a formal administrative hearing. 40 P.S. § 1008.9. Act 78 also specifies how such reviews and hearings are to be conducted. 40 P.S. § 1008.9(a)-(e). Finally, if a party wishes to further challenge the review afforded in section 1008.9, he is entitled to appeal the decision to the Commonwealth Court. 40 P.S. § 1008.10(a). During this entire review process, the insurance policy

1. Act of June 5, 1968, P.L. 140, No. 78 § 1 *et seq.*, as amended.

remains in effect. 40 P.S. § 1008.9(e); *Norwood A. McDaniel Agency v. Foster,* 117 Pa.Commw. 227, 234, n. 3, 543 A.2d 155, 158 n. 3 (1988). Thus, Act 78 provides for almost every eventuality that may arise when an insurer attempts to cancel an automobile insurance policy.

Our supreme court has addressed Act 78's impact on the remedies available to insurance companies when an insured had made misrepresentations on the application for insurance. In a plurality opinion authored by Justice McDermott, the court stated that "the General Assembly intended that in order to terminate a policy of automobile insurance an insurer *must* comply with Act 78." *Metropolitan Property and Liability Insurance Company v. Insurance Commissioner,* 517 Pa. 218, 229, 535 A.2d 588, 594 (1987) (emphasis added). Since *Metropolitan* requires insurance companies to abandon the common law remedies utilized prior to Act 78 and comply with Act 78 when cancelling an insured's automobile insurance, it follows that an insured's challenge to the appropriateness of that cancellation must also conform to the mandates of Act 78. The court considered several different factors in reaching this conclusion, but stated:

> most importantly, we believe that in passing Act 78, *the legislature intended that insurance questions were intended to be primarily resolved under the auspices of the Insurance Commissioner:* a scheme which has the advantages of providing for expeditious resolution of claims before a body which has particular expertise, as well as eliminating from the dockets of the trial courts a host of relatively minor cases, which could be time consuming and expensive to the individual litigants.

*Id.,* 517 Pa. at 226, 535 A.2d at 592 (emphasis added).[2] Thus, initial jurisdiction to decide disputes within the pur-

2. I am mindful that Justice McDermott's plurality opinion did not command a majority of the supreme court. His rationale, however, was subsequently adopted by this court in *Klopp v. Keystone Insurance Companies,* 378 Pa.Super. 605, 549 A.2d 221 (1988) *allocatur granted* 522 Pa. 577, 559 A.2d 38 (1989). *See Stevens v. Kemper Insurance Company,* 384 Pa.Super. 263, 267–268, 558 A.2d 113, 115 (1989).

view of Act 78 lies solely with the Insurance Commissioner, not in the courts of common pleas.

I, like the *Metropolitan* court, believe that the Insurance Commissioner is an expert in matters of insurance. Her expertise further supports my opinion that she alone possesses jurisdiction to initially review cancellation notices. "Where the subject matter is within the agency's jurisdiction *and* where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency." *Schriner v. Pennsylvania Power & Light Company*, 348 Pa.Super. 177, 181, 501 A.2d 1128, 1130 (1985) (emphasis original). Cancellation of an automobile insurance policy is, by section 1008.8's own provisions, within the jurisdiction of the Insurance Commissioner and, like most insurance questions, requires special competence. Accordingly, I believe that the trial court properly found it was without jurisdiction to entertain Rodland's claim that Metropolitan's cancellation of his policy of insurance was ineffective.

Section 1008.8(a) states that a party "may" request review by the Insurance Commissioner. The use of the word "may" does not indicate that the forum in which review may be sought is discretionary with the petitioner and that a party may opt to file suit in the court of common pleas. An analogous situation is found in the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*[3] Like Act 78, the Human Relations Act creates a comprehensive regulatory

Accordingly, I consider Justice McDermott's opinion and rationale controlling, and conclude that the trial court did not err in relying on it. Judge Wieand, concurring and dissenting in *Klopp*, stated that "[i]n the absence of a controlling decision by the [s]upreme [c]ourt, I would adopt and follow the reasoning of the Concurring Opinion authored by Chief Justice Nix in *Metropolitan Property and Liability Insurance Company v. Insurance Commissioner*, 517 Pa. 218, 535 A.2d 588 (1987)...." *Klopp*, 378 Pa.Super. at 611, 549 A.2d at 224 (Wieand, J. concurring and dissenting). Judge Wieand's majority opinion in the instant case appears to follow Chief Justice Nix's concurring opinion, and not Justice McDermott's opinion as subsequently adopted by this court.

3. Act of October 27, 1955, P.L. 744 § 1 *et seq.*, as amended.

scheme, including an administrative agency which serves as the initial arbiter of disputes arising under its provisions. *See* 43 P.S. § 951 *et seq.* The Human Relations Act provides that "[a]ny person claiming to be aggrieved by an alleged unlawful discriminatory practice *may* make, sign and file with the [Pennsylvania Human Relations] Commission a verified complaint...." 43 P.S. § 959(a) (emphasis added). Our courts have definitively held that, in such cases, the exhaustion of administrative remedies by the complainant by filing a complaint with the Pennsylvania Human Relations Commission is a condition precedent to jurisdiction in our court system. *See Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 89, 559 A.2d 917, 918 (1989) (supreme court held that "[b]ecause appellees failed to seek redress for their grievances through the [Pennsylvania Human Relations Commission], ... they were barred from judicial recourse"); *M.A.E. v. Doe & Roe,* 388 Pa.Super. 589, 566 A.2d 285 (1989) (failure to pursue administrative remedy for alleged discriminatory termination cognizable under the Pennsylvania Human Relations Act foreclosed the employee from pursuing judicial recourse).[4] Just as the Human Relations Commission possesses particular expertise in matters arising under the Human Relations Act, *Clay,* 522 Pa. at 91, 559 A.2d at 919, the Insurance Commissioner has particular expertise in the insurance field. *Metropolitan,* 517 Pa. at 226, 535 A.2d at 592. Given the parallel use of the word "may" in both Acts and the expertise possessed by the respective administrative agencies, it is my view that disputes arising under Act 78, like those arising under the Human Relations Act, must first be reviewed by an administrative agency before the

4. Our supreme court's decision in *Clay* was based on its interpretation of 43 P.S. § 953, which recognizes an individual's civil right to obtain employment without discrimination and states that the right "shall be enforceable as set forth in [the Act]." *Id.* The supreme court emphasized that the word "shall" indicated that this section should be considered mandatory. However, the section that describes the procedures to be followed, states that an aggrieved party "may" file a complaint. *See* 43 P.S. § 959. Like section 959, section 1008.8 of Act 78 also uses the word "may."

*Commonwealth Court* has jurisdiction to review the controversy.[5]

Also, section 1008.8's use of the word "may" has been interpreted as being mandatory by the Commonwealth Court. In *Erie Insurance Exchange v. Foster*, 121 Pa. Commw. 500, 551 A.2d 3 (1988), the Commonwealth Court stated that the twenty day period in which to request that the Insurance Commissioner review a cancellation was mandatory. The court reasoned that the "timeliness of the appeal and compliance with the statutory provisions which grant the right of appeal go to the jurisdiction of the court to hear and decide the appeal." *Id.,* 121 Pa. at 503, 551 A.2d at 4. The policy behind the twenty day rule, which argues strongly in favor of making it mandatory, is that "it is manifestly unfair to allow insureds to indefinitely sit on their rights, to the detriment of the insurer." *Id.,* 121 Pa. at 505, 551 A.2d at 5. As discussed earlier, if the insurers must comply with the provisions of Act 78, so too should insureds. As the trial court in this case cogently stated:

> [i]f Rodland is allowed to ignore the administrative remedy available by waiting until the time for review passes and then seeking damages in [the court of common pleas], he will be doing just what the *Metropolitan* court refused to allow insurers [to do]—choosing his own forum and thereby divesting the Insurance Commissioner of jurisdiction.

The majority states: "[t]here is nothing in the statute, ... which purports to make review by the [Insurance] Commissioner a condition precedent to an action to recover under a policy of insurance which has been alleged by the claimant to have been cancelled ineffectively by the insurer." Majority op. at 426–428. This statement is technically

5. The majority's disposition of this case allows Rodland to twice evade the statutory scheme for dispute resolution of insurance cancellation cases. First, it permits Rodland to by-pass the Insurance Commissioner as required by section 1008.8 and seek review of the propriety of the cancellation in the court of common pleas. *See* 40 P.S. § 1008.8. Second, Rodland's appeal from the order of the court of common pleas is before our court instead of the Commonwealth court as specified by section 1008.10(a). *See* 40 P.S. § 1008.10(a).

correct, but I cannot agree with the conclusion the majority draws from it. First, as already outlined, the comprehensive regulatory scheme established by Act 78, as well as subsequent judicial decisions, clearly contemplates that initial review is to be conducted exclusively by the Insurance Commissioner. Second, while in form, Rodland's complaint sought recovery of no-fault benefits for an accident that occurred after his policy was cancelled, an action over which the Montgomery County Court of Common Pleas had jurisdiction, it was, *in effect*, an attempt to collaterally attack the cancellation. Having failed to timely follow the procedure outlined in section 1008.8, Rodland should not be able to vitiate the consequences of his failure to comply with Act 78 by now framing his challenge to the cancellation in the form of a suit for damages.[6]

Hence, I agree that Rodland could file suit for no-fault benefits. However, the only issue the trial court was competent to decide was whether the denial of benefits was a breach of an active insurance policy. It had no power,

---

**6.** Proper compliance with the provisions of section 1008.8 would have obviated the need for the present suit. Rodland presently seeks damages for an accident which occurred after the policy was cancelled. However, under Act 78, Rodland's policy would have remained in effect during the review process. 40 P.S. § 1008.9. Therefore, quite possibly, Rodland's policy would have been in force when the accident occurred, just ten days after the cancellation became effective. In this appeal Rodland asserted that since he was seeking damages, a remedy not provided by section 1008.8, section 1008.8 was inadequate and therefore should not be applied to his case. The fallacy of this argument is that if Rodland had complied with section 1008.8 his policy might still have been in effect and provided him with benefits for the accident in question.

One is left to speculate whether Rodland would ever have challenged the cancellation if no accident had occurred. Clearly, however, once the policy was cancelled, both parties' contractual rights were extinguished. For example, it is beyond cavil that after cancellation, Metropolitan could not choose to require Rodland to pay premiums in accordance with the policy and enforce that choice by a suit on the contract. Similarly, Rodland could not, based on events occurring after cancellation, choose to sue for benefits under the policy and win. *See generally Klingensmith v. Klingensmith*, 375 Pa. 178, 184, 100 A.2d 76, 79 (1953) ("[o]bligations under a contract must be mutual and not merely unilateral, and both sides must be provided with the weapon of legal redress in the event either defaults on his obligations").

once Metropolitan raised the defense of policy cancellation, to inquire into the validity of the cancellation or the circumstances surrounding it. Accordingly, once Metropolitan showed that it had cancelled the policy, the trial court was required to dismiss the complaint for failure to state a cause of action upon which relief could be granted. This would be true in any suit for benefits in which the effectiveness of the policy cancellation had been put in issue *unless* the time for review by the Insurance Commissioner had not yet run. If the twenty days specified in section 1008.8 have not expired, the trial court should stay the proceedings and order the plaintiff to seek review by the Insurance Commissioner.[7]

The legislature, in enacting Act 78, provided a comprehensive regulatory scheme which included review of automobile insurance cancellations by the Insurance Commissioner. Accordingly, those procedures must be followed. Rodland failed to avail himself of the administrative remedy provided in section 1008.8, and therefore is precluded from seeking judicial recourse. The trial court order dismissing Rodland's complaint should be affirmed.[8]

---

**7.** Filing suit for no-fault benefits during the period in which an appeal to the Insurance Commissioner is available may be a tactic utilized by an over-cautious plaintiff who fears the statute of limitations on the no-fault action may run before the Insurance Commissioner makes her decision.

**8.** Although the complaint should have been dismissed for failure to state a cause of action upon which relief could be granted and not for lack of subject matter jurisdiction, we can affirm a trial court order for any reason. *O'Callaghan v. O'Callaghan,* 389 Pa.Super. 319, 323, 567 A.2d 308, 310 (1989).